ALICE M. RIETZEL *vs.* EDWIN F. CARY.

CHARLES W. RIETZEL *vs.* SAME.

MAY 1, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. These actions of trespass on the case for negligence were tried together before a justice of the superior court sitting without a jury and resulted in a decision for the

plaintiff in each case. The defendant duly excepted to such decision and the cases are now in this court on these exceptions.

The causes of action arose out of an accident which happened to plaintiff Alice M. Rietzel, wife of plaintiff Charles W. Rietzel, while she was walking down an unlighted stairway in defendant's apartment house in the city of Providence. Each brought an action against the defendant, but since the husband's action is dependent upon that of his wife, we shall hereinafter refer only to the wife's action.

Plaintiff's declaration consists of only two counts. The first count alleges that defendant's stairway was so peculiarly constructed that it constituted a danger amounting to a nuisance. The second count also alleges peculiar construction of the stairway and, in addition, a lack of natural light, necessitating the provision of artificial light to make the stairway safe for persons using the same; and it further alleges that the defendant was under a duty to plaintiff to provide such artificial light, and that he neglected to do so, by reason of which negligence on his part she, plaintiff, was injured. The nuisance count was not sustained, but the trial justice found for the plaintiff on the negligence count.

The facts are undisputed. Sometime after 12:30 o'clock in the early morning of November 25, 1937, plaintiff fell down an unlighted, winding stairway in defendant's apartment house and was seriously injured. She had entered the apartment house about 9:30 o'clock the night before and walked up this same stairway to the third floor, where a friend, on whom she was calling, occupied an apartment as a tenant of the defendant. The stairway was lighted at that time in accordance with an arrangement or understanding between the defendant and his tenants that he would provide artificial light in the hallways and stairways of the apartment house until 12:30 a. m., at which time such light would be automatically switched off.

The evidence shows that, at the place where plaintiff fell, going down the stairs, they wind so that from the first "straight tread" to the next "straight tread" at the end of the wind there is a drop of thirty-four inches on the side of the stairway where the stairs wind around the post. There is no room for a foothold on the parts of the winding stairs next to the post. Two experts testified as to whether such type of stairway was common and usual and whether or not such stair construction was safe. One expert was produced by the plaintiff and the other by the defendant. Both testified that such construction was common. Moreover, plaintiff's expert testified that the particular arrangement of the stairs in question here was also a common arrangement in winder stairways. "Q. And although winder construction is common, is the particular arrangement which you have observed up there common? A. As to winder construction? Q. Yes. A. Yes, yes."

He testified further that the use of winders is good architectural practice, but added: "I think most architects try to get away from winding construction in stair construction, and building their stairways very similar to the stairway that is in that stairway well leading from the second to the third floor that has no winders in it, although the ceiling heights are the same." In other words, his opinion was that winding construction was proper but not the best construction. "Q. The stairway on the other floor is what you call proper construction? A. Better construction than first to second."

This witness was allowed to give his opinion of the safety of the particular winding stairs in question here. His testimony on this point is consistent with his prior testimony as to the propriety of winding stair construction, although the trial justice seems to rely upon it to support his finding that these stairs were *inherently* not safe. In our opinion this testimony goes no farther than to state the existence of a danger if the stairway under certain conditions was unlighted. "Q. Having in mind what you testified to concerning

this stairway and these handrails, is it your opinion—what is your opinion concerning the condition of that stair well relative to safety without lights? A. I would consider it quite unsafe. Q. Would you say that presents a hazard to an ordinary person? A. At night? Q. At night. A. Yes, I would. Q. And what is the hazard that it presents? A. Well, the hazard is principally the lack of lights . . . ."

Defendant's expert testified positively that the type of winding stairs here in question was common and that he had seen them in many old and new buildings in Providence, some of which he named. Fundamentally, all of the evidence as to whether winding stairs were common, usual and proper construction was to the same effect, namely, that the stairs in question were not uncommon or unusual but were of the ordinary and usual type of winding construction and recognized as proper construction.

On this evidence, therefore, and assuming the plaintiff was not negligent, the only question was whether or not the defendant was guilty of negligence in not lighting the stairway after 12:30 a. m. In answering this question we must first of all consider what duty, if any, the defendant was under, as the owner of the apartment house, to provide artificial light for common passageways therein which were under his control.

A landlord who merely retains general control of common passageways is not thereby under any duty to a stranger rightfully upon the premises to see that such passageways are artificially lighted, if they are otherwise inherently safe and convenient. *Capen* v. *Hall*, 21 R. I. 364. This rule of law has not been changed by statute since that case was decided, and it was recently recognized and followed by us in *White* v. *Heffernan*, 60 R. I. 363. It therefore governs the instant case.

However, the plaintiff contends that her case falls within an exception to the general rule as indicated by certain lan-

guage in the opinion of the court in the *Capen* case, *supra*. There, this court said: "In cases of special danger from unusual construction, or by reason of traps and pitfalls, the rule might be otherwise. But as to ordinary halls and stairways we are not prepared to say that the owners of buildings owe any duty, in regard to lighting the same, to the persons who may use them."

Assuming that this language states an exception to the general rule, plaintiff, to come within such exception, was bound to show that the stairway in question was of an unusual type of construction and that because of such unusual or peculiar construction artificial light was therefore necessary for the protection of persons using it. She seems to have recognized this obligation because, in her declaration, she alleged the "peculiar construction" of the stairway and that such peculiar construction made the stairway dangerous and unsafe. By these allegations plaintiff was able to overcome a demurrer to her declaration such as was sustained in the *Capen* case, but the question for us to determine is whether or not, on the evidence here, she brings her case within the possible exception to the general rule which was indicated by the above-quoted language of this court in that case.

In order to prevail under that exception to the general rule, the plaintiff was bound to show that the stairway was of peculiar or unusual construction which rendered it inherently unsafe for use by an ordinary prudent person; that it required artificial light to make it safe for such use and that it was the duty of the defendant to provide such light. The failure on her part to establish any one of these elements in her case would be fatal to her claims for compensation on the theory which she has set out in the second count of her declaration.

There is no evidence that this type of stairway in the instant case is inherently unsafe or that this particular stairway was so peculiarly constructed as to present a hazard to

the ordinary prudent person using it. It is true that plaintiff's expert testified that it was a hazard *at night,* if left unlighted, but, at such time, so, more or less, are all unlighted stairways. This is not proof that it was inherently unsafe. Nor is it proof of peculiar or unusual construction constituting a trap or pitfall. What the plaintiff was obliged to do under the allegation in her declaration was to prove a hazard inherent in the stairway itself, due to some unusual or uncommon construction which made it what amounted to a trap or a pitfall. This, in our opinion, she has clearly failed to do.

Plaintiff, however, urges that her case is identical in principle with the case of *Marwedel* v. *Cook,* 154 Mass. 235, and that we ought to follow it. That case was referred to in *Capen* v. *Hall, supra,* but this court said it was not called upon then to decide whether or not to follow it. Whether or not it is identical in principle with the instant case, we are not able to say from the report of the case.

As we read the report it would seem that the case presented a question for the jury as to whether, on the evidence, the defendant had impliedly agreed to light the stairway. The Massachusetts supreme court has itself said that the case was one where an implied agreement was shown. *Polansky* v. *Heller,* 241 Mass. 484, 485. In that state the law is settled "that a landlord is under no obligation to light the common halls and stairways under his control in tenement buildings occupied by his tenants, unless he has undertaken to do so by express or implied agreement, or is bound so to do by statutory provisions." *Carey* v. *Klein,* 259 Mass. 90, 92; *Sodekson* v. *Lynch,* 298 Mass. 72.

The trial justice in the instant case apparently relied upon *Marwedel* v. *Cook, supra,* yet he says in his decision "that the stairway without artificial light was not inherently safe but that it was of such *construction* that it called for special care in the matter of lighting at night, and that it was in

the nature of a trap or pitfall to one using the stairs without the stairs being sufficiently lighted and, further, that a reasonable degree of care on the part of the landlord, this being an apartment house, required lighting this stairway after the time when the lights were shut off automatically and during the time when the plaintiff was injured." (italics ours) From our examination of the transcript, we cannot find any evidence of inherently unsafe construction that would justify implying an agreement on the part of the defendant to light the stairway here after 12:30 a. m., notwithstanding his express agreement with his tenants that lights in hallways were automatically switched off after that time.

Plaintiff argues that the finding by the trial justice is entitled to more than its usual weight because he took a view of the stairway and was, therefore, much better able to understand the evidence as it was given by the experts than this court is. The fact that he took a view cannot, however, supply evidence of peculiar construction which is lacking in the record. Of course, the purpose of a view is not to supply evidence but only to aid in the understanding of it.

In this connection we see no parallel in the present case with that of *Albro* v. *Matteson*, 64 R. I. 494, 13 A. 2d. 391, which plaintiff cites, and in which we pointed out the important part that the view by the trial court of the *locus in quo* must have played in that case in enabling that court to understand much of the evidence, which was unintelligible to us because of the manner in which certain witnesses testified. Nor do we see how *Hayman* v. *Union Corporation*, 66 R. I. 11, 17 A. 2d. 30, can be of assistance to the plaintiff. There is no evidence in the instant case that the construction of this stairway was so designed as to create an illusion, the effect of which was likely to mislead or deceive a person using it. Such evidence was presented in the *Hayman* case. Moreover, in that case it appeared that the landlord had assumed the obligation to light the hallway where the accident occurred.

The evidence of the construction of this stairway as it appears on the typewritten pages of the transcript is clear and intelligible. Furthermore, it is undisputed. As we said earlier in this opinion, both experts agreed that this type of winding stairway was usual and common, and that the particular arrangement of the stairs in this stairway was common in winder construction. All of this is readily apparent from a reading of the transcript and no view of the *locus* is necessary properly to understand such evidence.

We are, therefore, of the opinion that the trial justice erred in deciding for the plaintiff in each case.

The defendant's exceptions are sustained. The plaintiffs may appear before this court on May 7, 1941, and show cause why the cases should not be remitted to the superior court with direction to enter judgment for the defendant in each case.

*John M. Dunn,* for plaintiffs.

*Henry M. Boss,* for defendant.