## UNITED STATES v. LUTZ.

No. 8564.

Circuit Court of Appeals, Third Circuit.

Argued April 4, 1944.

Decided May 15, 1944.

Louis B. LeDuc, of Camden, N. J. (Milton C. Nurock, of Camden, N. J., and Isidor Ostroff, of Philadelphia, Pa., on the brief), for appellant.

Thomas J. Curtin, of Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., on the brief), for appellee.

Before JONES, GOODRICH, and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

The defendant was indicted on two counts for buying and selling Maine selected seed potatoes at prices higher than the maximum price permitted by Maximum Price Regulation No. 271 and § 4 of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 904(a). He was acquitted on the second count for selling, but found guilty on the first count which charged him with having "bought and received" seed potatoes at prices above the permitted maximums. Defendant has appealed from the judgment of conviction and sentence.

The underlying facts giving rise to the prosecution are not disputed. Defendant is a produce wholesaler in the city of Philadelphia. On April 19 certain individuals offered to sell him a hundred bags of No. 1 Maine selected seed potatoes and fifty bags of No. 2 Maine selected seed potatoes. The terms of the transaction were cash upon delivery. The price to be paid for the No. 1 seed potatoes was $6.50 per cwt. and for the No. 2, $4.55 per cwt. The potatoes were delivered to the defendant late in the afternoon on the same day. Defendant did not have the cash on hand to pay for them. He gave the sellers his check drawn to the order of cash in the amount of $877.60 with the understanding that he would go with one of the sellers to the bank the next morning and secure the cash for them. Pursuant to this arrangement one of the sellers called at defendant's premises the following morning and was told to return an hour later. He returned but was again told to come back. When he came back for the third time, about 10:30 A.M., an O.P.A. agent was on the premises and took possession of the check for the $877.60. This check remained in the possession of the O.P.A. and has never been cashed. However, after the intervention of the O.P.A. in the transaction, defendant paid the sellers $510.90 for the potatoes. This sum was not in excess of the established maximum prices.

Defendant contends that there was a failure to show that any maximum price regulation applicable to seed potatoes existed at the time the offense is charged to have been committed. This contention cannot be sustained. Maximum Price Regulation 271, covering certain perishable food commodities, was promulgated November 7, 1942, and became effective November 9, 1942. 7 Fed.Reg. 9179 (1942). It applied to "All white potatoes used for human consumption, not including seed potatoes," as defendant points out. § 1351.-1001(a) (1). However, it was amended a number of times after its initial promulgation. Paragraph 1 of Amendment 5, 8 Fed.Reg. 3397 (1943), made Maximum Price Regulation 271 applicable to "All white potatoes, whether used for human consumption or as seed potatoes." Paragraph 2(3) reads "Appendix C sets forth maximum prices for seed potatoes which were previously exempt from this regulation." Paragraph 3 provides "Section 1351.1003(d) is added to read as follows: (d) All intermediate sellers as defined in this section, who sell seed potatoes shall compute their prices under Appendix C." Section 1351.1019 as added by paragraph 7 deals with Appendix C. Subsection (a) thereof states that "Maximum prices for the sale of seed potatoes in bulk by farmers and in sacks * * * by country shippers * * * and intermediate sellers are established in this Appendix C." Subsections (c) and (d) state the method for computing the maximum prices to be charged by country shippers for sales of certified or selected seed potatoes. Subsection (e) states the method for computing the maximum prices for certified or selected seed potatoes to be charged by intermediate sellers. Paragraph (4) of subsection (f) requires the seller of seed potatoes to furnish an invoice stating that the selling price does not exceed the maximum price. Subsection (h) defines seed potatoes. Amendment 5 became effective March 19, 1943, one month before the offense charged was alleged to have been committed. Further amendments to Maximum Price Regulation 271, prior to April 19, 1943, did not exempt seed potatoes from Maximum Price Regu-

lation 271 but merely added to and further amended the provisions covering seed potatoes as promulgated by Amendment 5. See: Amendment 6, 8 Fed.Reg. 3733 (1943), effective March 24, 1943; Amendment 8, 8 Fed.Reg. 4725 (1943), effective April 8, 1943.

There can be no doubt therefore that on April 19, 1943, when defendant entered into the transaction in question, Maximum Price Regulation 271 as amended applied to seed potatoes such as were involved in the transaction. Intermediate sellers had to sell seed potatoes at prices not in excess of certain maximum prices. Defendant's vendors came within this classification.[1]

■ The government contends that, allowing the benefit of every possible mark-up permitted under the regulation to an intermediate seller in computing his maximum prices, it is clear that the prices for which the potatoes were to be purchased by the defendant were substantially beyond the ceiling prices allowed by Maximum Price Regulation 271. Defendant, per contra, contends that there were fatal infirmities in the proof of the ceiling price at the trial. The prosecution had an investigator of the O.P.A. testify on this issue. The United States Attorney asked of him:

"What is the ceiling price of No. 1 Maine selected potatoes? For a cash and carry wholesaler, after the first resale?
* * * * *
"A. * * * $4.78 * * * per/cwt bags.
"Q. * * * and now on the No. 2's: * * * * *
"A. $4.30 per/cwt. bag. *. * *"

The defect defendant points to is the fact that the question as phrased did not refer to "seed" potatoes, and thus no ceiling price was established for No. 1 and No. 2 Maine selected seed potatoes. However, full examination of the investigator's testimony discloses that the figures he stated pertained to No. 1 and No. 2 Maine selected seed potatoes.

The investigator did not, in his testimony, go into a detailed explanation of how he arrived at the figures he stated. In a brief filed with this Court, the step by step calculations were set out along with the sections of Maximum Price Regulation 271 relied upon. Defendant in a reply brief challenges the interpretations placed upon some of these sections, their applicability to the facts and hence the figures arrived at. We do not, however, share the view that there was a mistake in the sections relied upon or the results reached in applying them. Further, the defendant had an opportunity in the court below to cross-examine the O.P.A. investigator and by this and his own evidence to prove that the regulations did not apply to the facts or that the calculations were erroneous.[2] This counsel for defendant failed to do so that there was nothing before the jury but the figures offered by the government which the jury, by its verdict, accepted as correct.

■ The defendant also, in effect, now questions the admissibility of the statements that ceiling prices were $4.78 and $4.30 per cwt. Maximum Price Regulation 271 does not prescribe a flat dollar and cents ceiling price for seed potatoes; it

[1] § 1351.1003(a) defines "intermediate sellers":
"For the purposes of this regulation 'intermediate sellers' are divided into the following classes and the term means any wholesale seller, including, but not limited to terminal distributors, service and cash-and-carry wholesalers, carlot receivers, jobbers or any other person who purchases for the purpose of reselling, except country shippers and retailers, and who take title and make sales to any person who is not the ultimate consumer. The term 'ultimate consumer' does not include institutional, commercial or industrial users.
(1) *Class 1: Retailer-owned cooperative wholesaler.* * * *
(2) *Class 2: Cash and carry wholesalers.* A cash and carry wholesaler

is a wholesaler not in Class 1 who distributes food commodities for resale or to commercial, industrial and institutional users without materially changing their form and who does not customarily deliver or extend credit.
(3) *Class 3: Service wholesalers.* A service wholesaler is a wholesaler not in Class 1 who distributes food commodities for resale or to commercial, industrial or institutional users without materially changing their form and who customarily delivers, or delivers and extends credit to purchasers." 7 Fed. Reg. 9180 (1942).
[2] Defendant's counsel asked whether the investigator had a record of prices in court. The investigator answered that he had the computations he had made and the regulations with him.

only states the methods for arriving at the ceiling price in each particular case. The figures stated by the investigator were apparently computed on this basis, as now explained to us in argument. However, numerous factors entered into this determination: various differentials, freight charges, sellers' prices, etc. Some of these matters were issues of fact as to which the testimony of the investigator might have been inadmissible, as hearsay or as secondary evidence. The figures given by him were based on these factors and were obviously conclusions. If defendant had seasonably urged specific objections, the government would have had to adduce competent proof of the factors entering into the calculations and the correctness of the final determination. However, such objections were not urged and the court failed to request this evidence of its own motion. The rule is too well settled to require discussion that a rule of evidence [3] not invoked is waived [4] and that if there is a failure to object to the admission of testimony at the trial such objection will usually not be considered for the first time on appeal.[5] To prevent a failure of justice this rule has been relaxed,[6] especially in cases where the life or liberty of a defendant is involved. But the circumstances of this case leave no doubt that the maximum prices were violated and the jury found this violation to have been intentional. We are not to be understood as approving the method of proof used to establish the maximum prices. As evidentiary matters they were incorrectly offered into evidence. But it is too late for the defendant now to complain.

■ Complaint is made of the fact that the various amendments to the regulation were not offered in evidence in the trial below. They were judicially noticeable, both by the express provisions of the stat-

ute providing for the Federal Register,[7] and by precedent concerning judicial notice of action of a department of the federal government. United States v. Brown, 7 Cir., 1944, 140 F.2d 136. See Caha v. United States, 1894, 152 U.S. 211, 221, 222, 14 S.Ct. 513, 38 L.Ed. 415.

The next question is whether there was sufficient evidence for the jury to find that defendant "bought and received" seed potatoes at prices above those permitted by Maximum Price Regulation 271 and whether if he did, this constitutes a violation of the regulation and the act of Congress. Defendant's argument is that the transaction between himself and the sellers of the potatoes was a sale for cash and that title to the potatoes did not vest in him until the cash was paid. Since, at the time the O.P.A. agent interceded, the cash had not been paid for the potatoes, title never vested in the defendant and, therefore, he cannot be said to have "bought" them. The check which he gave to the vendors when they delivered the potatoes, it is said, was not intended as payment, but was merely a memorandum of the transaction until the cash could be procured.

■ We do not think it was the intendment of the statute or the regulations promulgated thereunder to have the enforcement of the Price Control Act turn upon technical concepts of the law of sales. The act is quite broad. It states that "It shall be unlawful * * * for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity * * * in violation of any regulation or order under section . . . or of any price schedule effective in accordance with the provisions of section 206 . . . or to offer, solicit, attempt, or agree to do any of the foregoing." § 4(a), 50 U.S.C.A.Appendix, § 904(a). The regulation provides that it shall not be

---

[3] As distinguished from a substantive rule of law, such as the "parol evidence" rule.

[4] 1 Wigmore on Evidence, 3rd Ed. 1940, § 18.

[5] Some recent decisions on this point are: United States v. Maggio, 3 Cir., 1942, 126 F.2d 155, certiorari denied 1942, 316 U.S. 686, 62 S.Ct. 1275, 86 L. Ed. 1758; Simon v. United States, 4 Cir., 1941, 123 F.2d 80, certiorari denied 1941, 314 U.S. 694, 62 S.Ct. 412, 86 L. Ed. 555; Hilliard v. United States, 4 Cir., 1941, 121 F.2d 992, certiorari denied 1941, 314 U.S. 627, 62 S.Ct. 111, 86

L.Ed. 503; Beausoliel v. United States, 1939, 71 App.D.C. 111, 107 F.2d 292; Reavis v. United States, 10 Cir., 1939, 106 F.2d 982.

[6] See: Mumforde v. United States, 1942, 76 U.S.App.D.C. 107, 130 F.2d 411, certiorari denied 1942, 317 U.S. 656, 63 S.Ct. 53, 87 L.Ed. 527; Miller v. United States, 10 Cir., 1941, 120 F.2d 968; Hayes v. United States, 10 Cir., 1940, 112 F.2d 676; Benson v. United States, 5 Cir., 1940, 112 F.2d 422, certiorari denied 1940, 311 U.S. 644, 61 S. Ct. 43, 85 L.Ed. 411.

[7] 44 U.S.C.A. § 307.

evaded "whether by direct or indirect methods, in connection with any offer, solicitation, agreement, sale, delivery, purchase or receipt of, [etc.]" Paragraph 4 of Amendment 5, supra. The judge charged the jury to find "Did the Defendant buy and receive potatoes at prices in excess of ceiling prices?" He did not go further and define to the jurors under what circumstances title passes under the law of sales. Counsel for defendant did not make any requests for charge on this point, nor did he take exception to the charge.[8]

■ There are several answers to the contentions of the defendant on this phase of the argument. The first is that since we are concerned here with a federal statute creating a federal offense, not in terms of state law, the local law of sales is inapplicable. When a commodity is offered at a certain price for cash upon delivery and the offer is accepted and the article delivered but actual payment is postponed until the following day, the purchaser can be said to have "bought" the commodity within the meaning of the Price Control Act and the applicable regulations.

■ Second, even if we assume that Congress had reference to the technical law of sales generally, there was no error in refusing to direct a verdict for the defendant. Although a sale for cash on delivery requires the payment of cash before title passes, where the seller delivers even though the buyer does not proffer the cash, the seller may be held under certain circumstances to have waived the condition and the transfer becomes absolute. See Frech v. Lewis, 1907, 218 Pa. 141, 67 A. 45, 11 L.R.A.,N.S., 948, 120 Am.St.Rep. 864, 11 Ann.Cas. 545; 3 Williston on Contracts, Rev.Ed.1936, §§ 730–733. We cannot say that as a matter of law, under the present facts there was not such a waiver. The question was for the jury. The defendant himself testified that he was approached to buy some potatoes and that he "bought them at the price—" These and other facts were properly submitted to the jury and defendant cannot complain of a failure to charge that which he did not request.

■ Third, there is a sufficient additional basis to uphold the verdict of the jury. The statute makes it unlawful "to buy or receive". The indictment charged the defendant with having "bought and received". Thus under the act it is unlawful if one (1) buys a commodity in violation of the act and regulations or (2) receives a commodity in violation of the act and regulations. The commission of either one of these acts, alone, is unlawful. Since the indictment charges both, conjunctively, proof of either one of them is sufficient to support a finding of guilt.[9] Here it is undisputed that the defendant received potatoes under an agreement and it was proved that the prices specified in that agreement were above those permitted at the time the potatoes were delivered. At the moment defendant so received them the statute was violated.

■ The defendant has stressed that ultimately he in fact paid for the potatoes at prices permitted by Maximum Price Regulation 271. As just stated, however, the offense already had been committed prior to that time. Payment was made after the O.P.A. had intervened. Prior to payment defendant had bound himself to pay at prices above those permitted and had received the commodities. Cf. Henderson v. Glasser, D.C.W.D.Pa.P.1942, 46 F.Supp. 460.

Affirmed.

---

[8] The court, apparently of its own motion, granted an exception to counsel for defendant to additional instructions given to the jurors at their request.

[9] Crain v. United States, 1896, 162 U.S. 625, 636, 16 S.Ct. 952, 40 L.Ed. 1097 (overruled on another point in Garland v. State of Washington, 1914, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772); Troutman v. United States, 10 Cir., 1939, 100 F.2d 628, 631; Shepard v. United States, 9 Cir., 1916, 236 F. 73, 81, 82; United States v. Hall, C.C.S.D.Ala.1871, 26 Fed.Cas. pages 79, 82, No. 15,282.