## UNITED STATES v. WEISS.
### No. 324.

Circuit Court of Appeals, Second Circuit.
June 4, 1945.

Writ of Certiorari Denied Oct. 8, 1945.
See 66 S.Ct. 45.

**18**

Harold H. Corbin and Walter Brower, both of New York City (John W. Burke, Jr., of New York City, of counsel), for appellant.

Peter J. Donoghue and John F. X. McGohey, U.S. Atty., both of New York City (Martin Klein and Joseph Brandwen, Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

Weiss appeals from a conviction upon thirteen counts of an information for selling whiskey at above the legal price. The first count was for "offering and agreeing to sell" 500 cases to one Moret; the second and third counts were for "selling and delivering" these cases in two installments of 250 cases each. The fourth count was for "offering and agreeing to sell," 500 other cases to Moret; the fifth and sixth, for "selling and delivering" these cases in two installments. The seventh was for a third sale of 200 cases; the eighth for its delivery in one installment. The ninth was for a sale of 300 cases; and the tenth for a delivery of 150 of these. The eleventh was for "offering and agreeing to sell" whiskey to another buyer—Waldorf Liquors, Inc.—and the twelfth and thirteenth were for "selling and delivering" this liquor in two installments. We shall speak of counts one, four, seven, nine and eleven as "contract" counts; and of the other eight as "sale" counts. The questions upon this appeal are two: (1) whether what Weiss did fell within § 904(a) of Title 50 U.S.C.A.Appendix; (2) whether, if so, the sentences were excessive. To an understanding of the first point, a statement of the testimony is necessary; the second we reserve for the moment. In considering the testimony we may disregard that which was relevant to the sale to Waldorf Liquors, Inc.: counts eleven, twelve and thirteen; because, if the transactions with Moret were within the statute, there can be no question as to these.

Moret, a wine and liquor wholesaler in Atlanta, Georgia, testified that while in New York Weiss called upon him at his hotel and asked him whether he was "interested in buying some Scotch Whiskey"; told him "that he could get some whiskey for me," and "quoted the price" at $25.50 in bond; "the billing price would be around $11.82 and the balance would be cash to him." To this Moret answered that he "would take it on that basis"; and Weiss then "instructed" him "to send a letter to Park, Benziger ordering the goods," which were to be 500 cases "split up into two shipments of 250 cases each" because Weiss "did not want too much Scotch coming at one time." Moret agreed, procured the whiskey from Park, Benziger & Co. at the legal price and sent the balance of the purchase price—$13.68 a case—in bills by air express to Weiss's wife. Later, Weiss asked him whether he could "use another 500 cases," and he said that he could; whereupon the transaction took the same course. A third time Weiss called him up and told him that "he could get me another 200 cases," and "I told him I would be interested in getting 200 cases"; and again the matter went through as before, except that the cash was sent to Moret's uncle. Finally, Weiss telephoned and said that "he could get me another 300 cases * * * and for me to send up the money to my uncle, which I did"; but only the first installment of this—150 cases—was ever delivered. Upon cross-examination Moret was asked whether the transaction might be characterized as a payment to Weiss for his services in procuring a seller of the whiskey, and he said that one

"could put it that way"; but it is clear that this interpretation was not conclusive upon the jury; and indeed it was their duty to interpret it for themselves. The judge charged them that, if Weiss was only an agent of Moret, or of Park, Benziger & Co. he could not be convicted; nor in case he was a "finder": i.e. one employed to seek out a seller; and, that Weiss must be a seller, or an offeror. He added, however, that it was not necessary that, when Weiss offered the whiskey, he should have owned it, or that Moret should have supposed that he owned it; or that he ever should have title to it.

So far as concerned the "finder," this charge was perhaps more favorable than Weiss was entitled to; so far as concerned the sales, it was plainly right. Section 942(a) provides that "the term 'sale' includes sales, dispositions, exchanges, leases, and other transfers, and contracts and offers to any of the foregoing," and indeed § 904(a) itself includes an "offer" to sell. If Moret was to be believed, Weiss had agreed to sell him the whiskey: i.e. he had sought Moret out in his hotel, had asked him whether he wanted whiskey, had told him that he "could get" it, and had named the price. That included all the elements of a contract of sale; for there can be no doubt that one may contract to sell goods of which one has not the title. Irwin v. Williar, 110 U.S. 499, 508, 4 S.Ct. 160, 28 L.Ed. 225; Clews v. Jamieson, 182 U.S. 461, 489, 21 S.Ct. 845, 45 L.Ed. 1183; Uniform Sales Act § 5. It is true that in most contracts for the sale of goods, not owned by the seller, he expects that, before the time set for performance, title will pass to him and from him to the buyer; but it is in no sense necessary that this should be true for the contract to be one of sale. If the promisor in fact has command over the goods at the time of performance, so that he can procure the transfer of title from the owner to the buyer, it is of no importance that it does not pass through him. Since obviously the performance of a contract of sale must be itself a "sale," the evidence at bar was enough to support the verdict upon all the counts, with a possible exception to be noted. Particularly in the case of a statute so vital to the welfare of the nation (Hecht Co. v. Bowles, 321 U.S. 321, 331, 64 S.Ct. 587, 88 L.Ed. 754), we are to have in mind its purpose and construe it accordingly. United States v. Lutz, 3 Cir.,

142 F.2d 985. The possible exception arises from the doubt whether, for the purposes of the statute, a preceding contract of sale may not be merged as an offence in the sale itself, when a sale in fact follows: i.e. whether there can be a valid conviction both for the contract and the sale. It was to avoid any such question that the judge sentenced Weiss as we shall describe; and this raises the second point upon the appeal.

He imposed sentences of six months upon all counts except three of the "sales" counts—numbers eight, ten and thirteen—on which he suspended sentence. These prison sentences were to run concurrently; and, under law too well recognized to need the citation of authorities, it would make no difference if none of the "contract" counts should have been submitted to the jury; a verdict on any single "sale" count would have been enough to support the sentence. He also imposed a fine of $5000 upon each of counts two, three, five, six, and twelve; $25,000 in all; and this raises two questions: (1.) whether the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., applied, or the Stabilization Act, 50 U.S.C.A.Appendix, § 961 et seq.; (2.) whether, when delivery under a single contract of sale is made in two installments, there are two "sales" within the meaning of the statute and therefore two offenses, or only one. We shall consider these questions in that order.

Section 205(b) of the Emergency Price Control Act, § 925(b), Title 50 U.S.C.A. Appendix, provides a maximum penalty of $5000 for any violation of § 4 of the Act, and subdivision (a) of § 4 makes it an offence to violate any regulation promulgated by the Price Administrator under § 2. On the other hand, § 11 of the Stabilization Act, § 971, Title 50, U.S.C.A.Appendix, provides a penalty of $1000 for every violation of that act, or of any regulation promulgated under it. The regulation which Weiss violated was Maximum Price Regulation No. 445 after its amendment (effective August 14, 1943); and Weiss argues that, since it was promulgated under the Stabilization Act, the maximum penalty which could be imposed was $1000, because the two acts being inconsistent in this regard, the later must prevail. In support of his position that No. 445 in its amended form was promulgated under the Stabilization Act, he calls attention to its

preamble which recites that it was issued, not only under the Emergency Price Control Act, but under Executive Orders No. 9250 and No. 9328, 50 U.S.C.A.Appendix, § 901 note; and that the President promulgated these orders—as their recitals declare—by virtue of the power vested in him by the Stabilization Act, and not by the Emergency Price Control Act. It is clear, however, that § 11 of the Stabilization Act was not intended to apply to the violation of all regulations which might be promulgated under that act, in spite of the generality of its language. Section 7(b) of that act declares, among other things, that the penalties provided by the Emergency Price Control Act for the violation of regulations promulgated under that act, shall apply to regulations "issued by the Price Administrator in the exercise of any functions which may be delegated to him under the authority of" the Stabilization Act, so far as that is not inconsistent with the Stabilization.Act itself. Weiss's argument must presuppose that Maximum Price Regulation No. 445 when the Price Administrator amended it, was, in some part anyway, "issued * * * in the exercise of * * * functions * * * delegated to him under the authority of" the Stabilization Act, for otherwise § 11 of that act would have nothing to do with violations of it. But, if that be true: that is, if it was in part so "issued," § 7(b) preserved the penalties of the Emergency Price Control Act. To hold that the inconsistency between those penalties and the penalties prescribed by § 11, threw § 7(b) out of operation, would reduce § 7(b) to impotence, for it would leave no penalties whatever upon which it could operate, and yet it specifically mentions penalties. Besides, being the more specific of the two provisions, it supersedes the more general. It follows that the maximum penalty was $5000.

■ The last question is whether the judge was wrong in imposing a separate penalty upon count three and count six, these being for the second installments of the whiskey contracted for in counts one and four. We need not decide that question, because, if the judge was in error as to that, it was among those "technical errors * * * which do not affect the substantial rights of the parties." § 391, Title 28 U.S.C.A. 'Weiss was convicted for five separate sales, even though we treat delivery in two installments as a single "sale and delivery." Instead of imposing a fine upon counts three and six, the judge could have therefore imposed those fines upon counts eight and ten which concerned the only deliveries made under the third and fourth contracts of sale to Moret. It was of not the slightest importance which count the judge selected; the mistake, if mistake it was, was "technical" to the last degree. It is true that that would have resulted in imposing fines upon two of the counts upon which the judge suspended sentence, but there was no objection to that. Section 724, Title 18 U.S.C.A., expressly allows the suspension of sentence and imposition of a fine upon the same conviction.

Judgment affirmed.