Alice J. (Gray) McLain *vs.* Edwin I. Tripp *et al.*

JULY 3, 1947.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is an action in assumpsit brought by the payee and holder of a demand promissory note against the makers thereof. A trial in the superior court resulted in a verdict of the jury for the defendants, and the trial justice thereafter denied the plaintiff's motion for a new trial. The case is before us upon plaintiff's bill of exceptions to that and other rulings during the course of the trial.

The undisputed evidence shows that Benajah B. Gray, late husband of the plaintiff, hereinafter referred to as Gray, was a retired businessman who invested in mortgages; that he supplied $3000 with which the defendants purchased

the house in which they live in Tiverton, Rhode Island; that an undated promissory note payable on demand to the plaintiff, Gray's wife, in the sum of $3000 with interest at the rate of 5% per annum payable semiannually in advance was signed by them at his request and delivered to her; that interest payments of $150 were made annually in advance by the defendants from at least January, 1928 to December, 1939; and that receipts therefor were given to the defendants by the plaintiff and the date and amount of each payment was entered by her on the back of the note.

There is a conflict in the evidence as to when the note was made and delivered; as to the date when the first interest payment, recorded on the back of the note as December 1, 1927, was actually made; as to whether the note was given for any legal consideration; and whether it was conditionally delivered by defendants.

The evidence for the plaintiff tends to show the following facts. In 1927 the defendants owned a lot of land on which they planned to build a house. Because of the high cost of building materials they were advised by Gray that it would be more advantageous for them to purchase the house on the adjoining lot, which he had found to be for sale for $3000. When it was suggested by one of the defendants that they did not have the money to finance such a transaction, Gray offered to advance the $3000 on condition that they make and deliver a note for $3000 payable to his wife, with interest at 5%. According to the plaintiff, Mr. Tripp preferred that it be a personal note rather than a mortgage, but agreed to "any way Mr. Gray wanted it drawn up." After negotiations by Gray and Tripp for the purchase of the house, the $3000 was turned over to defendants in late November or early December, 1927; the demand note in question was drawn up by the plaintiff and was signed at that time by the defendants; and the house was then purchased and a deed thereto dated December 17, 1927 was recorded December 19, 1927.

According to the plaintiff, Tripp asked for delay in mak-

ing the first payment of interest until he sold a wood lot that he owned in Westport, Massachusetts; and when that lot was sold in January, 1928, the first payment of $150 interest on the note was made by defendants, and by agreement this payment was recorded on the note as of December 1, 1927. Payments of interest thereafter were made annually because of Tripp's preference, and the last payment of such interest was made in advance on December 1, 1939, after the death of Gray in July, 1939. When formal demand for payment of the note was made in 1944, the defendants refused to make any further payments and this action was commenced.

On the other hand the evidence for the defendants tended to show the following facts. The $3000 was a gift to the defendants by Gray in consideration of friendship and kindness extended by them to him, and the note in question was not talked about or signed by them at the time of the gift or purchase of the house. About a year or a year and a half thereafter Gray complained to the defendants that his wife was always "nagging him" about giving so much of his money away, and he requested them, in order to keep peace in the family, to sign a note and pay some interest thereon to her during his life. According to defendants, Gray then said he would arrange matters before he "kicked out" so that defendants would owe nothing further and their house would be free and clear. On these representations they signed the note and delivered it on the condition that they would pay only the interest.

A great deal of testimony concerned the alleged statements made by Gray at the time of the loan, at the signing of the note, and when the house was purchased. To support plaintiff's evidence, disinterested witnesses were presented who testified that Gray had told them that the transaction was a loan to the defendants and not a gift. Other disinterested witnesses, including the agent who sold the house and who testified that Gray had negotiated for its purchase, testified that Gray stated that the transaction was

a gift to defendants and not a loan. On this conflicting evidence, the question was presented to the jury under an instruction that if they found that Gray furnished the $3000 as a loan their verdict should be for the plaintiff; and that if they found Gray had made a gift of such sum to the defendants the verdict should be for them.

■ The plaintiff's first exception relates to the admission of certain testimony concerning statements alleged to have been made by Gray a year or two before his death, that is, several years after the note was executed and delivered. The question reads: "Can you tell us what that conversation was?" Following plaintiff's objection and a discussion, the question was repeated and the answer was: "Well, she asked me to stay with Mr. Gray, one morning, until she went to the drug store to get some supplies. But she told me to sit down in the kitchen— Mr. Corcoran: It is not responsive. She was asked what was the conversation. The Court: Please answer the attorney's question." The examiner then asked a series of questions that did not call for conversations with Gray as of the time which was objected to by the plaintiff. From what has been quoted it will be seen that there is no prejudicial answer to the original question, which is the subject of plaintiff's first exception, and therefore that exception is overruled.

Plaintiff's second exception relates to the admission, over objection, of testimony as follows: "Q. Mrs. Tripp, I will take you back to the time when the $3,000. was turned over to you by Mr. Gray. That was before the house was bought. Do you remember when the money was delivered to you and your husband? A. Well, he came upstairs. I was alone at the time. He handed me this envelope, saying: 'Here is $3,000., the price of your home.' Q. Did you say anything to him? A. I said: 'Thank you, Mr. Gray.' Q. What did he say then? A. He said: 'You don't need to thank me. You have done enough nice things for me, that I feel I should do something nice in return.' "

■ These questions related to statements by Gray at

the time the money was turned over to the defendants before the note was signed, and not at a time years after the note was signed, as the plaintiff claims. In our opinion, if otherwise competent and found to conform to the provisions of general laws 1938, chapter 538, §6, they were admissible as statements of a deceased person. See *Tillinghast* v. *Harrop*, 63 R. I. 394; *Bradley* v. *Quinn*, 53 R. I. 108.

The plaintiff's third exception is to the refusal of the court to instruct the jury in accordance with her requests to charge. In view of our conclusion upon the plaintiff's fourth exception, it becomes unnecessary to discuss the reasons under this exception.

■ The plaintiff's fourth exception is to the ruling denying her motion for a new trial. The motion was based upon the usual grounds that the verdict was against the law, the evidence and the weight thereof. The duty of the trial justice on the motion for a new trial is to pass his independent judgment upon the credibility of the witnesses and the weight of the evidence. *Nichols* v. *New England Tel. & Tel. Co.*, 57 R. I. 180; *Spaziano* v. *Raponi*, 65 R. I. 163. In so doing in the instant case, it was his duty to independently appraise all the evidence and weight thereof in the light of the law as given to the jury. The trial justice had instructed them: "The defendant comes in to defend himself and it is up to him to make his defense *clear* to you, so that you will believe his side of the story." (italics ours)

While this statement of the burden of proof could have been amplified and made more helpful, nevertheless we take it to mean that the defendants, who claimed a gift of the principal sum of $3000, had the burden of establishing that claim by clear and convincing evidence. In his decision, however, after stating in substance that the testimony of the plaintiff and that of the defendant wife about canceled each other for reasons that would be apparent to one who saw and heard them testify, he then seems to rely largely if not entirely on a conclusion that "the other witnesses did not, in any way, strongly contradict Mr. Tripp and I think

there was a sufficient preponderance on the Defendants' behalf to warrant the verdict that the jury brought in."

 In this appraisal no reference was made and apparently no weight was given to the possible contradiction of the testimony of Mr. Tripp by the documentary evidence of the note itself and the conduct of the parties thereunder, particularly concerning the admitted payments of interest substantially as called for by the note and extending to a date beyond Gray's death. These should have been considered with the testimony, especially since Gray had died and so much depended upon what he had intended and what he had said and done. Of course, if the testimony for the defendants throughout is believed, their defense on the ground of lack of consideration for the note was valid as against the payee thereof, the plaintiff here; but the probative value of their testimony necessarily involves a consideration of all the conflicting evidence and not merely the testimony of certain witnesses.

In this connection we are of the opinion that the trial justice in concluding that the defendants had sufficiently proved their claim of gift, in accordance with his instructions to the jury, overlooked either the law or certain material evidence of the note itself and the defendants' conduct thereunder. At least his decision does not make clear to us that he had weighed all of the pertinent evidence in passing upon the credibility of the witnesses and the weight of their testimony in reaching his conclusion. We therefore think that his decision was clearly wrong.

The defendants, however, contend that if the trial justice did not perform his duty properly according to the rule governing his action in passing on a motion for a new trial, we then examine the transcript independently in accordance with the appellate rule, which requires that we must be able to say that the evidence strongly preponderates against the verdict before we should set it aside. We agree with that statement of the law. *Monacelli* v. *Hall*, 71 R. I. 55.

 In the instant case the credibility of the witnesses

and probative value or weight of their testimony may depend peculiarly on the opportunity to observe and hear them testify. However, we are required to make our decision independently without seeing or hearing them, and without the benefit of a proper appraisal of their testimony by the trial justice in the light of all the conflicting evidence. In these circumstances the evidence, as we view it merely from the record, strongly preponderates against the verdict, and justice between the parties will be better served if the issues are presented to another jury under adequate instructions as to the applicable law.

The plaintiff's fourth exception is sustained, and the case is remitted to the superior court for a new trial.

*Burdick, Corcoran & Peckham, Edward J. Corcoran,* for plaintiff.

*Sheffield & Harvey, J. Russell Haire,* for defendants.