398 A.2d 1125.

CHARLES J. BURNS *vs.* WILLIAM JANES *et al.*

MARCH 6, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

BEVILACQUA, C.J.   This is a civil action for personal
injuries and pain and suffering brought by Charles J. Burns
(plaintiff) against William, Edna and Patricia Janes
(defendants).[1] The plaintiff brought an action in the Superior
Court to recover for damages sustained when he was attacked
and bitten by the defendants' one-year-old English bulldog.
Subsequent to a jury verdict for the plaintiff in the amount of
$4,713.67, the defendants made a motion for a new trial.
The defendants' motion was denied and this appeal followed.

It is uncontroverted that on September 11, 1972, plaintiff,
a meter reader for the Newport Electric Corporation,
entered defendants' enclosed backyard at 83 Division Street
in Newport. At the time defendants' dog was in the backyard
sitting on the rear stairs. The plaintiff proceeded to walk to
the electric meter located approximately 20 feet from the
dog.

The remaining facts are substantially disputed. The
plaintiff testified that as he read the meter, the dog stood up
and attacked him without provocation. He further testified
that although he was screaming and kicking in an attempt to
get the dog to release him, the dog bit him at least five times
causing him to fall to the ground. He also claimed that
during the attack, Mrs. Janes came out of the house and
pulled the dog away from him by the collar. While Mrs. Janes
controlled the dog, plaintiff got up and left the yard. Once in
front of the house, plaintiff asked Mrs. Janes to call an ambu-
lance which took him to Newport Hospital for treatment.

Mrs. Janes, the only defendant present during the

---

[1]At the time the cause of action arose, the defendants William and Edna were
husband and wife, and Patricia was their 20-year-old daughter.

incident, testified that on the morning in question she was standing in her kitchen when she first saw plaintiff. She claimed that plaintiff looked to the back stairwell, saw the dog, then "started to jump around and go crazy." She testified that because she knew then that plaintiff was frightened of the dog, she told plaintiff to stand still so she could get the animal.

Mrs. Janes further stated that when she entered the backyard and approached plaintiff, he threw his flashlight and meter book at her, causing the dog to attack him. She then testified that when she attempted to control the dog, plaintiff kicked her repeatedly. According to Mrs. Janes, the more plaintiff kicked her, the more the dog attacked plaintiff. She then stated that she finally restrained the dog and told plaintiff to leave the yard.

As a result of the incident, plaintiff received numerous lacerations to his right leg, right hand and forehead. Subsequent medical treatment for the lacerations revealed on his lower right leg a 1-2 centimeter ulcer requiring hospitalization. He entered Newport Hospital on September 29, 1972, for treatment of the leg ulcer and cellulitis of the lower right leg. The plaintiff was subsequently released on October 5, 1972 with instructions containing certain ambulatory restrictions for continued treatment of the ulcer at home. He returned to work on October 25, 1972, approximately 6 weeks after the initial incident.

On appeal, defendants contend that the trial justice committed three errors during the course of the trial. First, defendants claim that the trial justice improperly admitted hearsay testimony relating to the alleged vicious propensity of their dog. Second, defendants maintain that the trial justice erroneously allowed plaintiff to use Mrs. Janes' answers to interrogatories, which were characterized as prior inconsistent statements at trial, as probative evidence. Third, defendants further allege that the trial justice abused his discretion in denying their request to allow a view of the Division Street residence. The defendants argue that each of

these specific errors is of sufficient magnitude to mandate a new trial. The defendants also argue that notwithstanding the alleged errors during the trial, the trial justice erred in denying their motion for a new trial and in concurring with the jurors' award regarding liability and damages.

# I

The defendants maintain that plaintiff failed to meet his initial burden of proving by a fair preponderance of the evidence that their dog was prone to viciousness. The defendants bolster this contention by drawing our attention to the fact that the trial justice excluded as hearsay most of the direct testimony introduced by plaintiff's witness, Earl Smith (Smith), concerning an earlier attack on Smith's co-worker Larry Toppins (Toppins) by the same dog. The trial justice excluded this testimony because Smith did not witness the alleged incident.[2] The trial justice did permit Smith to testify that he had observed a small nick in Toppins' boot. The defendants argue, however, that this testimony was insufficient to establish a vicious propensity in the dog since there was no admissible evidence connecting the dog's attack and the nick on the boot.

The defendants' argument fails to consider Smith's subsequent testimony.[3] They did not object to questions numbered 79, 82 and 83 even though they were predicated upon hearsay testimony not on the record. It is well settled

---

[2]While the defendants objected to a portion of Smith's testimony as hearsay, they did not make a continuous objection, pursuant to Super. R. Civ. P. 46, to all his testimony concerning the alleged biting of Toppins.

[3]On redirect examination the following questioning and exchanges took place:

"79 Q Since Larry was bitten by the bulldog where have the people been putting their trash?
A Out front on the sidewalk.

80 Q Have you or any of your men since that day, winter of '71 or '72, been inside the premises at 83 Division Street to pick the trash?
A Not that I know of.

81 Q Tell the folks why.
Mr. Lewis: Your Honor, I think we've had this testimony on both

that hearsay evidence to which no objection is offered is entitled to be treated as if it were legally admissible and to be accorded whatever probative weight the factfinder believes it deserves. *McAree* v. *Gerber Products Co.,* 115 R.I. 243, 257, 342 A.2d 608, 615 (1975); *Desrosiers* v. *Hemingway Bros. Interstate Trucking Co.,* 114 R.I. 146, 148, 330 A.2d 74, 76 (1975); *Gilbert* v. *Girard,* 109 R.I. 68, 71, 279 A.2d 919, 921-22 (1971). Such testimony is admissible because the failure to object to its admission is deemed a waiver of its incompetency. *United States* v. *Lutz,* 142 F.2d 985, 988-89 (3rd Cir. 1944); *Gilbert* v. *Girard,* 109 R.I. at 71, 279 A.2d at 921-22. Because Smith's testimony about the alleged previous biting was clearly relevant to the issues of the dog's vicious propensity and defendants' knowledge of their dog's earlier vicious behavior, Smith's testimony was admissible and entitled to be accorded probative effect to the extent the factfinder deemed appropriate. *McAree* v. *Gerber Products Co.,* 115 R.I. at 257, 342 A.2d at 615; *Gilbert* v. *Girard,* 109 R.I. at 71, 279 A.2d at 921-22.

Although defendants did object to the question numbered 81, they grounded their objection on their belief that the anticipated testimony had been previously placed on the record. Following defendants' objection the trial justice allowed Smith to answer the question, reasoning that the testimony was already in the record.[4] Smith's response to the question, however, was not responsive.

---

> direct examination and cross-examination.
> Mr. Hirsch: It's a fair question.
> The Court: It's in there. I will allow it one more time.
> A  Because he was bitten by the dog.
>
> 82 Q  Thank you. That was the English bulldog?
> A  That's right.
>
> 83 Q  That was at 83 Division Street?
> A  Right."

[4]Our reading of the record indicates that the trial justice as well as the defendants presumed the objected-to question would be answered based on the previous testimony of Smith. That testimony alluded to the fact that the extensive use of plastic garbage bags caused an increasing number of people to leave their refuse on the sidewalk instead of in cans on their property.

We have previously held that if a witness gives an unresponsive answer to a proper question, the opposing party should immediately make a motion to strike the improper answer. *Dawley* v. *Congdon*, 42 R.I. 64, 69, 105 A. 393, 395 (1919). Therefore, defendant had the responsibility of making a motion to strike Smith's answer. Absent such a motion, Smith's response, even though based on hearsay, was properly allowed into the record and was entitled to be treated as if it were legally admissible and of probative value. *Gilbert* v. *Girard*, 109 R.I. at 71, 279 A.2d at 921-22.

The defendants next argue that the trial justice erred in allowing plaintiff to introduce Mrs. Janes' answers to interrogatories during her cross-examination. It is well settled that the scope and extent of cross-examination is a matter within the reasonable discretion of the trial justice. Our review is limited to whether the trial justice abused that discretion. *Pansey* v. *Pansey*, 115 R.I. 97, 102, 340 A.2d 120, 124 (1975); *Calci* v. *Brown*, 95 R.I. 216, 220, 186 A.2d 234, 236-37 (1962); *Feuti* v. *Feuti*, 92 R.I. 219, 221, 167 A.2d 757, 758 (1961); *Mikaelian* v. *Mikaelian*, 86 R.I. 119, 125, 134 A.2d 164, 167 (1957). It is likewise well settled that an adverse party may use answers to interrogatories for any purpose,[5] including impeaching the credibility of a party as a witness, subject to the evidentiary rules of admissibility. *Halpert* v. *Rosenthal*, 107 R.I. 406, 420, 267 A.2d 730, 737 (1970). We are therefore of the opinion that the trial justice did not abuse his discretion in allowing plaintiff to cross-examine Mrs. Janes by using her answers to interrogatories.

We now come to defendants' assertion that the trial justice erred in denying their motion for a view of the Division Street property. They argue that a view of the enclosed yard as well as the surrounding area would have been a helpful device during the trial and that the trial justice's denial of the motion was an abuse of discretion. In their belief, defendants

---

[5]Super. R. Civ. P. 33(b) allows an adverse party to use answers to interrogatories to the same extent as provided in Super. R. Civ. P. 26(d) concerning the use of a party's deposition.

have indicated that a twofold purpose would have been fulfilled by allowing a view of the area. First, defendants had hoped to have the jurors actually see the dog as well as observe the fact that he was in an enclosed yard. Second, defendants felt the view would have helped the jurors to understand the testimony better.

In denying the motion, the trial justice correctly asserted the well-established principle in this jurisdiction that a view cannot be used as evidence. Rather, it is a device that provides an opportunity for the jurors as well as the court to understand the testimony that is to be adduced at trial. *Russo v. Stearns Farms Realty, Inc.* 117 R.I. 387, 394, 367 A.2d 714, 718 (1977); *Corrado v. Providence Redevelopment Agency,* 110 R.I. 549, 556, 294 A.2d 387, 390 (1972); *see Rietzel v. Cary,* 66 R.I. 418, 424, 19 A.2d 760, 763 (1941); *State v. Frazier,* 101 R.I. 156, 161-62, 221 A.2d 468, 472 (1966). As the trial justice also noted, defendants' request was made very near the conclusion of the trial. A view taken near the end of the trial would not have helped to achieve a better understanding of the testimony. As a result we are of the opinion that the trial justice did not abuse his discretion in concluding that a view would not be of assistance to the jurors.

## II

We now consider the trial justice's denial of defendants' motion for a new trial. The defendants urge that the trial justice erred in finding that plaintiff established liability in regard to the biting. Furthermore, defendants contend that even assuming arguendo that defendants were liable, the damages awarded by the jurors were disproportionate to the true merits of the controversy.

In ruling upon a motion for a new trial, a trial justice must independently pass on the material evidence in view of the law of the case and the weight and credibility he assigns to each of the witnesses. *Barbato v. Epstein,* 97 R.I. 191, 193, 196 A.2d 836, 837 (1964); *Cottrell v. Lally,* 94 R.I. 485, 489, 182 A.2d 302, 304 (1962); *McLain v. Tripp,* 73 R.I. 105, 110,

53 A.2d 919, 922 (1947). In reaching his decision the trial justice is not required to state all of the evidence upon which he relies since he is free to accept some or all of the evidence as having a probative effect. *Barbato* v. *Epstein*, 97 R.I. at 193, 196 A.2d at 837. He is required, however, to indicate the specific evidence upon which he relies in making his decision. *Morinville* v. *Morinville*, 116 R.I. 507, 511-12, 359 A.2d 48, 51 (1976).

Our review of the record indicates that the trial justice made his ruling on defendants' motion for a new trial in accordance with the procedure outlined above. The trial justice reviewed the evidence within the framework of his charge to the jury, which embodied the law of the case. The plaintiff had to show that defendants' dog had a vicious or mischievous propensity to bite or attack people and that defendants had knowledge or notice of that propensity. The trial justice thus reviewed the testimony of Smith concerning the alleged biting incident involving Toppins and the testimony of defendants' neighbor, Orville Ross, that while plaintiff was on the ground during the September 11, 1972 incident, defendants' dog "was in contact with the plaintiff's trouser leg" and that "[t]he dog was not friendly." In light of this testimony, the trial justice concluded that plaintiff had established a vicious propensity on the part of the dog. The trial justice also noted that since the Toppins' incident, defendants no longer leave their refuse in the back yard; they place it instead on the sidewalk in front of their house. The trial justice thus decided that defendants knew of their dog's vicious propensity. We hold that the trial justice did not err in those conclusions.

In determining whether the jurors' award was disproportionate to the amount of damages suffered by plaintiff, the trial justice first surmised that the jury award for damages was a composite of $3,000 for pain and suffering and permanent damages and $1,713.67 for compensatory damages. Citing *Tilley* v. *Mather*, 84 R.I. 499, 124 A.2d 872 (1956),

the trial justice then stated that he would review the jurors' award only if it appeared to be grossly excessive.

In order to rule on the defendants' motion, the trial justice also had to decide whose account of the incident he found most credible. He indicated that he believed the plaintiff's injuries were caused by the dog's unprovoked attack. He noted that following the attack, one of the plaintiff's wounds ulcerated requiring a week of hospitalization and subsequent visits to his physicians. He also indicated that the plaintiff had been out of work approximately 5 to 6 weeks and that he continued to suffer pain. Basing his decision upon these findings, the trial justice found that the verdict was not grossly excessive and that there was no demonstrable disparity between the amount awarded and the pain and suffering endured by the plaintiff as a consequence of his injury. 84 R.I. at 502, 124 A.2d at 874. We conclude that the trial justice did not err in refusing to reduce the jurors' award of damages.

The defendants' appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

*Kirshenbaum & Kirshenbaum, Alfred Factor,* for plaintiff.

*Dean J. Lewis,* for defendants.