**Matter of BLACKSTONE VALLEY DISTRICT COMMISSION.**

**In re SEPTIC WASTE DUMPING FACILITIES.**

**No. 83–31–Appeal.**

Supreme Court of Rhode Island.

April 11, 1985.

Stephen P. Nugent, Berndt W. Anderson, Roberts Carroll Feldstein & Tucker, Providence, for plaintiff.

Arlene Violet, Atty. Gen., Richard B. Wooley, Asst. Atty. Gen., for defendant.

OPINION

KELLEHER, Justice.

In 1977 the Cullen family (the Cullens) were the owners of a 32-acre tract of undeveloped real estate located in the town of Lincoln and situated on the northerly side of Washington Highway in an area zoned for light-industrial or manufacturing uses. In early August 1977, the Blackstone Valley District Commission (the district) invoked its powers of eminent domain and condemned 2.09 acres of the Cullens' real estate as a site for a "septic waste disposal facility," which was designed to serve the needs of the area's cesspool cleaners. When negotiations regarding the extent of the Cullens' loss reached an impasse, the litigants turned to the Superior Court, where the Cullens filed their petition for an assessment of damages.

During two days of testimony in May 1982, a Superior Court justice listened to the presentation of evidence from five witnesses, three for the Cullens and two for the district. As is usual in condemnation proceedings, the dispute for the most part centered on the testimony of two real estate appraisers, one for the Cullens and the other for the district.

The Cullens' expert testified that the fair market value of his clients' entire parcel of land was $20,000 per acre prior to the filing of the condemnation plat. Accordingly, he valued the 2.09 acres that would serve as the site of the disposal facility at $41,800. The expert was also of the belief that the fair market value of the remainder of the property was reduced because of the odors that might emanate from the nearby disposal facility. Consequently, he valued the remaining parcel of approximately 30 acres as having a fair market value of $16,000 per acre, a loss in value of $4,000 per acre. The appraisal of the condemned property by the district's expert was $32,300, and he believed that the location of the disposal facility would not in any way diminish the value of the remaining acreage.

At the conclusion of the presentation of testimony, the district's attorney informed the trial justice that there had been a discussion about taking a view. An off-the-record discussion then occurred. At its conclusion, the trial justice announced that he was taking the case under advisement and afforded counsel the opportunity to submit memoranda of law on the issue of severance damages.

Some three months later, on August 27, 1982, the trial justice returned to the bench, and after announcing that he had taken a view of the subject property, he adopted the estimates given by the Cullens' expert, including the severance damages of

$4,000 an acre. The trial justice revealed that he had not only taken a view and exercised his sense of sight, but also his sense of smell. After alluding to some unobjected-to hearsay testimony that indicated that on one occasion an odor was detected by an employee of a nearby potato-chip plant which, in the employee's opinion, came from the disposal facility, the trial justice remarked: "The Court finds as a fact that there is an odor. The Court has taken a view and the Court finds and believes and understands that there is an odor that emanates from the use of the dumping facility and for that reason the Court finds as a fact there is a diminution of the remaining land." We reverse.

On several occasions it has been stressed that the taking of a view is not per se error, but it cannot be used as evidence.[1] Rather, it is a device that provides an opportunity for the jury or the judge to better understand the testimony that is to be adduced at trial. *Burns v. Janes*, 121 R.I. 343, 398 A.2d 1125 (1979); *Russo v. Stearns Farms Realty, Inc.*, 117 R.I. 387, 367 A.2d 714 (1977); *Corrado v. Providence Redevelopment Agency*, 110 R.I. 549, 294 A.2d 387 (1972); *see State v. Smith*, 70 R.I. 500, 41 A.2d 153 (1945); *Rietzel v. Cary*, 66 R.I. 418, 19 A.2d 760 (1941). It was clearly error for the trial justice to use the view, and more particularly the exercise of his olfactory sense, as evidence.

The district's appeal is sustained; the judgment, insofar as it relates to the severance damages, is vacated; and the case is remitted to the Superior Court for a new trial.

---

**1.** The majority of jurisdictions subscribe to the view that a view is not evidence. Commentators have been most critical of the nonevidentiary status of a view. McCormick, *Evidence* § 216 at 680 (Cleary 3d ed. 1984). One such critic is Professor Wigmore, who, in speaking of the viewing by a judge, states that the judge, like a jury, may leave the courthouse and proceed to the locus, "provided only that he observe the usual rule of fairness for a jury view, *viz.*, that he notify the parties and allow them to attend him at the view." 4 Wigmore, *Evidence* § 1169 at 391 (Chadbourn rev. ed. 1972).