**UNITED STATES v. SEGELMAN.**

Cr. No. 12645.

United States District Court
W. D. Pennsylvania.

July 14, 1949.

Edward C. Boyle, Asst. U. S. Atty., Pittsburgh, Pa., for United States.

Premo J. Columbus, Pittsburgh, Pa., for defendant.

GOURLEY, District Judge.

This is a criminal action and comes before the Court on motion of the defendant for a new trial and/or arrest of judgment. Rules 33 and 34 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

The defendant was tried by the court with jury and convicted on each count of a six count indictment.

The statute under which the indictment was returned provides, inter alia, "Whoever shall receive, conceal, store, barter, sell, or dispose of any goods, * * * securities, or money of the value of $5,000 or more, * * * moving as, or which are a part of, or which constitute interstate

* * * commerce, knowing the same to have been stolen," shall be guilty of a criminal offense. 18 U.S.C.A. § 416 [now § 2315].

This statute was repealed by the Act of June 25, 1948, 62 Statutes 862, and effective September 1, 1948, 18 U.S.C.A. § 416. However, for all practical intents and purposes since the offenses occurred prior to September 1, 1948, they are governed by the Act of Congress in effect at the time the offenses were committed.

## Motion for New Trial

No objection has been made to any rulings made by the Court during the trial relative to the admission or rejection of testimony, and no objection was taken to any part of the Court's charge. The basis for the motion is premised on circumstances which the defendant believes made impossible a fair, just and impartial trial.

Defendant's motion is supported by two theories:

(a) As to the First and Second Counts of the indictment, it is necessary to premise the conviction on the testimony of an admitted perjurer.

(b) That three counts of the indictment must be supported by proof of the burglarizing of three homes, and substantial prejudice, therefore, arose to the defendant.

■ The burden of demonstrating prejudicial error is on the defendant. Myres v. United States, 8 Cir., 174 F.2d 329.

■ (a) No merit exists as to the contention relative to the testimony which the government offered through a witness who had been convicted in a state court for perjury. In a most exhaustive manner the Court informed the jury as to the evaluation which could be given the testimony of a perjurer. In short, that a person convicted of perjury may testify in the federal courts, and it is the prerogative of the jury to determine the extent of credibility to be given the witness. The Court furthermore instructed the jury that said testimony must be scrutinized with the greatest care and caution. Although the perjurer was disqualified generally as a witness in the courts of Pennsylvania, the Pennsylvania rule does not apply in the federal courts. United States v. Margolis, 3 Cir., 138 F.2d 1002; Rosen et al. v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406.

■ (b) The statute clearly embraces several distinct offenses and the power of Congress to provide that separate acts, though parts of a continuous transaction, shall constitute separate crimes, cannot be doubted. Carpenter v. Hudspeth, Warden, 10 Cir., 112 F.2d 126.

■ Where a single continuous transaction may constitute a violation of distinct provisions in a statute, the test in determining whether other separate offenses are charged in different counts of the indictment is whether each count requires proof of a fact which is not required of the others. Carpenter v. Hudspeth, Warden, supra.

■ Where there is more than one count in an indictment, it is not proper to strike down the conviction of one count because evidence was received during the course of the trial on other counts of the indictment which might have had some effect on the jury's consideration of evidence presented on other counts. To set aside the conviction under the circumstances would seem to require a like reversal in any case in which there was a multiple count indictment. United States of America v. Thomas B. Ward, Jr., 3 Cir., 175 F.2d 556.

Furthermore, the defendant did not ask or request the severance of the trial relative to those counts where such a request would have been proper.

■ I, therefore, do not believe that any situation or condition exists which justifies or merits the granting of a new trial.

## Motion to Set Aside Conviction or in Arrest of Judgment

The circumstances relating to each count of the indictment are different, and it, therefore, becomes necessary to consider the problems which exist as though there were six separate indictments.

## Count I

It is charged that on or about the 31st day of March, 1947, at McKeesport, in the County of Allegheny, in the Western District of Pennsylvania, the defendant, Irving Segelman, did knowingly and wilfully receive a certain stolen security, to wit, a $5,000.00 United States Treasury Bond, the property of one Nathan Tanzer, Yonkers, New York, which said security had theretofore been stolen, and which was moving as, and was a part of, and constituted interstate commerce from New York City, New York, to McKeesport, Pennsylvania; he, the said defendant, well knowing said security to have been stolen.

## Proof as to Count I

The entry and burglarizing of the Nathan Tanzer home at Yonkers, New York, was carefully and thoroughly planned. Mr. and Mrs. Tanzer had gone away for the Labor Day week-end. During the afternoon of September 2, 1946, through the aid of a woman accomplice, the defendant and two associates forced their way into the home. Two daughters and a friend were in the home. Guns were displayed and for a period of over an hour the home was ransacked and burglarized. Among the property which was stolen was the bond or security involved in this count of the indictment. Before the burglary the defendant had brought his wife to McKeesport since she was going to bear him a child, and it was with the intention of making McKeesport their home, at least, until after the child was born.

The whereabouts of the bond was next known when a person by the name of Mehlman presented it to a McKeesport bank as collateral security for a loan. It was then determined that the defendant had given the bond to Mehlman in payment of one form or the other of gambling obligations on or about March 31, 1947.

■ In determining the sufficiency of the evidence to support the jury's verdict, the Court must take that view of the evidence which is most favorable to the government and give the government the benefit of all inferences which reasonably may be drawn in its favor. Myres v. United States, supra.

In order to support the offense laid in said count of the indictment, it is necessary for the government to prove several things:

(a) That on the 31st day of March, 1947, the defendant knowingly and wilfully received the stolen security of the value of $5,000 at McKeesport, in the County of Allegheny, in the Western District of Pennsylvania.

(b) That said security was the property of Nathan Tanzer of Yonkers, New York.

(c) That said security had theretofore been stolen.

(d) That said security was moving as interstate commerce, or said security was a part of interstate commerce, or which constitute interstate commerce.

(e) That said defendant well knew said security to have been stolen.

No problem exists as to the proof being absolute that the security was the property of Nathan Tanzer, Yonkers, New York, that it was stolen from his home, and that it was subsequently in the possession of the defendant at McKeesport, Pennsylvania.

The difficulty arises when consideration is given as to:

(a) Did the defendant receive the stolen security at McKeesport, Allegheny County, Pennsylvania, on March 31, 1947, within the terms and intent of the Act?

(b) Was the stolen security at that time moving as interstate commerce, was it a part of interstate commerce, or did it constitute interstate commerce within the terms and intent of the Act?

(c) Did the defendant know said security was stolen when he received the same?

(a) A most involved question exists in determining whether the testimony supports the basic charge laid in Count I of the indictment: "That on the 31st day of March, 1947, the defendant knowingly and wilfully *received* the stolen security of the value of $5,000 *at McKeesport, in the County of Allegheny, in the Western District of Pennsylvania.*" (Emphasis supplied.)

Considerable reliance has been placed by the defendant on the case of Gable v. United States, 7 Cir., 84 F.2d 929, to support his position that the indictment cannot be sustained as a matter of law under the proof.

In that case the defendant was indicted, inter alia, "Receiving securities, knowing them to be stolen." Seven government bonds were procured by fraud or stolen by persons other than the defendant in the state of Missouri. They were thereafter transported to Illinois, and taken to the defendant for sale. The defendant never went to Missouri and there was no evidence to show that he knew of the theft or how the bonds were secured. It was held that the receiver is not guilty unless the property which he receives has been stolen while moving in or constituting a part of interstate commerce.

I believe this case is clearly distinguishable from the case at bar.

In the case at bar the defendant participated in the theft and secured possession as a result thereof. The only reasonable inference to draw is that the defendant brought the security from New York to McKeesport, Pennsylvania, since it was in his possession several months after the theft at McKeesport. The defendant, therefore, caused the security to constitute interstate commerce.

It seems reasonable to me that once a person gets possession of a stolen security in one state and it is next determined to be in the same person's possession in another state, that he continues to receive the same knowing it to have been stolen.

Generally when the word "receive" is used, the impression or thought arises that possession is secured from a source outside of oneself or itself.

However, the word "receive" is also defined as to "take," to "accept," to be "subjected to," "committed," to "get," to "acquire." Webster's International Dictionary, 2d Edition, 1936, Unabridged, Page 2076.

The words "receive" and "accept" are legal equivalents. United States v. Winnicki, 7 Cir., 151 F.2d 56; United States v. Wainer, 7 Cir., 170 F.2d 603.

The defendant unquestionably secured possession of said bond as a result of the burglarizing of the Tanzer home at Yonkers, New York, on September 2, 1946. The security, therefore, came into his possession in the state of New York. Its whereabouts was next determined at McKeesport, Pennsylvania, on or about March 31, 1947 in the possession of the defendant.

I believe the proof sufficiently establishes and the jury was justified in finding that the defendant received the security under the meaning and intent of the Act, at McKeesport, Pennsylvania.

(b) Was the stolen security at the time of its receipt moving as, or which was a part of, or which constitute interstate commerce from New York, New York, to Pittsburgh, Pennsylvania?

In connection with the indictment, the scrivener who prepared the same set forth the offenses in the conjunctive rather than in the disjunctive. It was set forth that the defendant knowingly and wilfully received a certain stolen security on or about the 31st day of March, 1947, at McKeesport, Allegheny County, Pennsylvania, well knowing said security to have been stolen, which said security was moving as, *and* was a part of, *and* constituted interstate commerce from the City of New York, New York, to McKeesport, Pennsylvania.

The Act of Congress under which the indictment was drawn is worded in the disjunctive, in that where reference is made to the offenses, it is set forth that the security must be moving as, *or* which are a part of, *or* which constitute interstate commerce.

It is contended that since the security was stolen by the defendant at Yonkers, New York, and brought to McKeesport, Pennsylvania, by him (this is the only logical inference to draw from the testimony), that the security was not moving as and was not a part of interstate commerce.

Therefore, it is sufficient for the government to prove the securities, at the time of receipt, were in the classification of the Act's provision "which constitute interstate * * * commerce?"

120

The indictment charges three offenses in the language of the statute, but they are charged in the conjunctive rather than the disjunctive.

 Although an indictment charging a statutory offense must follow the statute creating it, where the statute denounces several acts as a crime, they may be charged in one indictment or in a single count if they are connected in the conjunctive. An indictment drawn in that manner is not duplicitous, and it is sufficient to prove any one or more of the charges. Troutman v. United States, 10 Cir., 100 F.2d 628; United States v. Lutz, 3 Cir., 142 F.2d 985; Pines v. United States 8 Cir., 123 F.2d 825.

The charging of the various criminal acts in the conjunctive does not create a new crime. The question, therefore, "boils" itself down to whether the government has established that the defendant received the security while it was moving as, or was a part of, or which constitute interstate commerce.

Much reliance has also been placed on the rule enunciated by the Supreme Court that the possession of property shortly after it had been stolen in another State does not created a presumption that the possessor had transported the property in interstate commerce. Bollenbach v. U. S., 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350.

When the case is first analyzed, the impression is gained that the court was using the word "presumption" synonymously with "inference." This is especially true when consideration is given to the minority opinion of Justice Black. Bollenbach v. U. S., supra.

As a result of this impression being gained, in the charge to the jury in the instant case the Court instructed the jury in substance that no inference could be drawn that the defendant transported the securities in interstate commerce from the fact that the defendant was in possession of property recently stolen, although an inference could be drawn that the possessor was the thief.

After more careful study, consideration, and reflected judgment is given to the Bollenbach case, it is clear to me that the Supreme Court was not using the word "presumption" synonymously with inference, or, in short, that what is true as to presumptions is not applicable as to inferences.

This same view is shared by the Circuit Court of Appeals in the Ninth Circuit. Said Court has stated, "the ground of the holding [in the Bollenbach case] is not made clear, but it seems probable that what was thought error in the charge was the use of the word 'presumption.' At any rate, until the [Supreme] Court clarifies its decision we shall assume that it did not intend to ban the inferences of fact naturally drawable from the unexplained possession of recently stolen property." In short, it was held where a jury is at liberty to infer that a defendant stole property, the jury is also warranted in drawing an inference that the defendant transported the property, knowing it to be stolen, in interstate commerce to another state, where it was found in his possession. Morandy v. United States, 9 Cir., 170 F.2d 5, 6.

There is a decided difference in legal terminology between the meaning of the words "presumption" and "inference."

 An "inference" is nothing more than a permissible deduction from the evidence.

A "presumption" is compulsory and prima faciely establishes the fact to be true, or is compulsory, if not disproved. A presumption cannot be disregarded by a jury while an inference may or may not be depending on the deductions made by the jury from the evidence. Wigmore on Evidence, 3rd Edition, Presumptions, Para. 2490, Volume IX.

A presumption, therefore, has a technical force or weight, and the jury, in the absence of sufficient proof to overcome it, should find according to the presumption; but, in the case of an inference, there is no technical force attached to it. The jury in the case of an inference is at liberty to find the ultimate fact one way or the other, as they may be impressed by the testimony.

In one case a presumption—the law draws a conclusion from the evidence, and

in the other an inference—the jury may draw such a conclusion.

A person who receives stolen chattels knowingly does so at the peril of their having been stolen while in course of interstate transportation. He cannot escape conviction because he did not know whether they were stolen in intrastate or in interstate commerce. Kasle v. United States, 6 Cir., 233 F. 878, 882; Rosen v. United States, 2 Cir., 271 F. 651; United States v. Sherman, 2 Cir., 171 F.2d 619.

The defendant also argues in support of the motion in arrest of judgment that the recent case of United States v. Tannuzzo, 2 Cir., 174 F.2d 177, is decisive of the question.

Said authority is readily distinguishable from the case at bar, and in fact the court said that all that is necessary to establish the substantive offense of receiving stolen goods, stolen while moving in interstate commerce, is to show that the defendant knew that the goods were in fact transported in interstate commerce. See also United States v. Sherman, supra.

I, therefore, believe that where a person is in recent possession of stolen property, an inference cannot only be drawn that the possessor is the thief, but a further inference that the possessor transported the property, knowing it to be stolen, in interstate commerce to another state where it was found in his possession in one state and had been stolen in another state.

The defendant in the instant case was, therefore, given a more favorable charge than what the law actually required, and no possible prejudice could have arisen against him.

Regardless, the jury believed that under all the testimony it had been established beyond a reasonable doubt that the defendant received said security at McKeesport, Pennsylvania, knowing it to have been stolen, while it was moving as, or was a part of, or which constituted interstate commerce.

Obviously some person transported the security in interstate commerce from New York to McKeesport, Pennsylvania. As the defendant participated in the theft at New York, and it is the most logical inference to draw therefrom, since the defendant was in the possession of the security at McKeesport, Pennsylvania, it was at least part of his share of the loot.

The stealing of property which "constitutes" an interstate shipment is as much an offense under the law as stealing goods actually in transit or moving as, or comprising a part of interstate commerce. The verb "constitute" is defined as "To set or station in a given situation, state or character" or "To fix or determine, as a trait or characteristic." United States of America v. Nathan Gollin and Benjamin Richman, 3 Cir., 176 F.2d 889.

I do not see why the same reasoning should not have application to an individual who receives property which constituted interstate commerce knowing it to have been stolen.

Hence, proof existed both direct and by circumstantial evidence (the drawing of inferences from recent possession), that the defendant was the thief. I believe the jury was at liberty to infer that the defendant transported the security, knowing it to be stolen, to the place where it was found in his possession. Morandy v. United States, supra.

The problem would be solved if the defendant had been indicted under 18 U.S.C.A. § 415 [now § 2314] for transporting said security in interstate commerce, knowing it to have been stolen. However, the defendant is indicted under 18 U.S.C.A. § 416 [now § 2315] for receiving the security at McKeesport, Pennsylvania, knowing it to have been stolen, while it was moving as, or which was a part of, or which constitute interstate commerce.

Since the security was in the possession of the defendant at McKeesport, Pennsylvania, after he had come there to establish his residence, the security was not moving as, nor was it a part of interstate commerce.

Interstate commerce loses its interstate character when it arrives at a

given destination. Murphy v. United States, 6 Cir., 133 F.2d 622; Chapman v. United States, 8 Cir., 151 F.2d 740.

However, each count of an indictment is considered as if it were a separate indictment, and the disposition of one count does not affect the other. Murphy v. United States, supra.

Therefore, was the security one which constituted interstate commerce?

The defendant first came to McKeesport, Pennsylvania, in June of 1946, and lived at the residence of his wife's people. He considered said residence as his own and returned to New York for matters of business at one time or the other, and then returned to McKeesport, Pennsylvania. It appears, therefore, that when the defendant was found with the security which is involved in Count I of the indictment, he was making McKeesport, Pennsylvania, his permanent residence, and had been there from time to time from the latter part of July or the first part of August of 1946.

In arriving at the intent and purpose of the phrases "moving as," or "which are a part of," or "which constitute interstate * * * commerce," the jurisdictional provisions of the Act seem to support the conclusion reached.

It is there provided, inter alia, that any person violating the section under which the defendant has been indicted, may be tried in any district from, into or through which said securities have been transferred or removed. 18 U.S.C.A. § 418, [now § 3237].

As previously stated, when the security had reached its destination from one state to the other, it would no longer be moving as, or a part of interstate commerce, since the journey had ended.

Therefore, in my judgment, the phrase "which constitute interstate * * * commerce" was placed in the Act to control such a situation as we have in this count of the indictment.

Congress could have only intended that the subject matter of the Act should have been taken from one state to the other

when the expression was used "or which constitute interstate * * * commerce."

Count I of the indictment is, therefore, not sustainable as to the offenses charged "moving as," or "which are a part of interstate commerce," but is sustainable as to the offense or "which constitute interstate * * * commerce."

(c) No great burden arises in disposing of (c).

The defendant was at least in constructive possession of the security. He participated in the theft which each member of this ruthless gang had a part to play in order to make the burglarizing of the home of Nathan Tanzer a success. The defendant's part was to stand guard over the inmates of the home. The escapade was carefully and thoroughly planned, and the failure of any one of the three or four who participated to perform his part would have been fatal. There is an old adage or saying, "There is honor among thieves," and the defendant's possession of the security at McKeesport, Pennsylvania, is clearly understood. It was, at least, part of his share of the loot.

In addition thereto, there arises from the possession of stolen securities an inference which the jury may draw that the possessor is the thief. Giardiano v. United States, 2 Cir., 139 F.2d 198; United States v. DiCarlo, 2 Cir., 64 F.2d 15; Booth v. United States, 9 Cir., 154 F.2d 73.

I have no difficulty in concluding that sufficient evidence exists in the record to justify the jury in finding that the defendant knew the security was stolen.

In determining the matters which are involved in the other counts of the indictment and to avoid any unjust inferences being drawn from the facts which exist in support of Count I, it is necessary to remember that each of the other five counts must, separate and apart from each other, be self-sustaining.

### Count II

The second count of the indictment charges that on or about the 3rd day of June, 1947, at McKeesport, in the County

of Allegheny, in the Western District of Pennsylvania, the defendant, Irving Segelman, did knowingly and wilfully receive a certain stolen security, to wit, a $5,000.00 United States Treasury Bond, the property of one Samuel Sperling, New York City, New York, which said security had theretofore been stolen, and which was moving as, and was a part of, and constituted interstate commerce from New York City, New York, to McKeesport, Pennsylvania; he, the said defendant, well knowing said security to have been stolen.

The home of Samuel Sperling at New York City, New York, was burglarized by some person or persons on May 25, 1947, and, among other things, stolen from said home there was a $5,000.00 United States Treasury Bond. The whereabouts of the bond was ascertained on the 3rd day of June, 1947, at McKeesport, Pennsylvania, in this district, when the defendant endeavored to secure a loan from a McKeesport bank and place said bond as collateral security. This loan was being secured to pay part of a gambling debt to a person by the name of Mehlman who operated a "smoke shop" or most extensive gambling den.

The same facts and circumstances exist as to why the defendant was residing at McKeesport, Pennsylvania, which have been discussed fully in Count I.

Although there is evidence from which the jury could find the defendant was in New York when the home of Sperling was burglarized on May 25, 1947, there is no direct evidence or any circumstance which would justify the drawing of an inference that the defendant had any part in the theft. No one was home at the Sperling home when the burglary was committed.

There is no question that the bond involved in Count II was owned by Samuel Sperling, and that some person or persons originally secured possession through the theft thereof.

### Count III

It is charged that on and about the 8th day of August, A.D. 1946, at McKeesport, in the County of Allegheny, in the Western District of Pennsylvania, the defendant, Irving Segelman, did knowingly and wilfully receive a certain stolen security, to wit, a $1,000.00 United States Treasury Bond, Serial No. 116213-C, the property of one Pincus Rothstein, Lawrence, Long Island, New York, which said security had theretofore been stolen, and which was moving as, and was a part of, and constituted interstate commerce from New York City, New York, to McKeesport, Pennsylvania; he, the said defendant, well knowing said security to have been stolen.

### Count V

It is charged that on and about the 8th day of August, A.D., 1946, at McKeesport, in the County of Allegheny, in the Western District of Pennsylvania, the defendant, Irving Segelman, did knowingly and wilfully receive a certain stolen security, to wit, a $1,000.00 United States Treasury Bond, Serial No. 484667-H, the property of one Pincus Rothstein, Lawrence, Long Island, New York, which said security had theretofore been stolen, and which was moving as, and was a part of, and constituted interstate commerce from New York City, New York, to McKeesport, Pennsylvania; he, the said defendant, well knowing said security to have been stolen.

As to Counts III and V, on the 14th day of July, 1946, the home of Pincus Rothstein at Lawrence, Long Island, New York, was burglarized and two United States Treasury Bonds of the value of $1,000.00 each were stolen by some person or persons.

Although the jury could find from the evidence that the defendant was in New York when these bonds were stolen, there is no evidence, direct or circumstantial, to justify the drawing of an inference that the defendant had any part in the theft. No person was at the home when it was burglarized.

There is no question that the two bonds were owned by Pincus Rothstein, and some person or persons secured the original possession through the theft thereof.

The whereabouts of the two bonds was first determined after their theft on July 14, 1946, at Long Island, New York, when the defendant was found in possession at McKeesport, Pennsylvania, on or about

August 8, 1946. On said date he sold them to a man by the name of Feldman.

The securities involved in Counts III and V were of a value less than $5,000.00. Under the provisions of the Code then existing, where a defendant is charged in the same indictment with two or more violations, then the aggregate value of the securities referred to in such indictment shall constitute the value thereof for the purposes of the indictment. 18 U.S.C.A. § 417 [now § 2311].

Counts III and V, in view of the amounts in Counts I and II, were, therefore, properly laid in the indictment.

The legal principles which have application to Counts II, III and V are the same, and are similar to those which apply to Count I.

The problem is in their application to the facts. In short, as to Count I there is direct and circumstantial proof that the defendant participated in the theft of the security. As to Counts II, III, and V the proof as to the connection of the defendant with the theft, or knowledge that the securities were stolen, is based on inferences. Their theft remains as "unsolved crimes."

The only proof to establish knowledge of the defendant that said securities were stolen must rest on the inference that can be drawn from recent possession of stolen securities, that the possessor is the thief. The time relationship is close; Count II nine days after theft, Counts III and V twenty-five days. Giardiano v. United States, supra; DiCarlo v. United States, supra; Booth v. United States, supra.

From recent possession of stolen property, a further inference can be drawn that the person in possession transported the same in interstate commerce. This question has been discussed in detail in Count I. Morandy v. United States, supra.

Our problem is, therefore, resolved to the questions (1) whether there is any proof to establish the defendant received the securities at McKeesport, Pennsylvania, and (2) if they were moving as, were a part of, or which constitute interstate commerce.

There is no evidence to establish the defendant received the bonds at McKeesport, Pennsylvania, while they were moving as, or were a part of interstate commerce.

An inference can be drawn since the defendant was in recent possession of stolen property, he was the thief. A further inference can be drawn that the defendant transported the securities from New York to Pennsylvania, knowing them to be stolen, or in interstate commerce, since they were found in his possession. Morandy v. United States, supra.

As a result, through the defendant's own act, based on inferences, he caused said securities to fall within the provision of the Act, wherein it is made an offense to receive securities, knowing them to be stolen, which constitute interstate commerce.

All questions have been answered with the exception of the sufficiency of the proof to prove the defendant received the securities at McKeesport, Pennsylvania. This is the hurdle or stumbling block which the government must surmount.

I have no question in my mind that due to the cunningness displayed in the theft of the Tanzer bond, Count I, and the similarity of approach in the theft of the Sperling bond, Count II, and Rothstein bonds, Counts III and V, that the same gang was involved and the defendant was a member thereof.

■ However, in our federal courts a person charged with crime cannot be convicted on suspicion, and it is not amiss to remind it is not a question whether guilt could be spelt out of the record, but whether guilt has been found by the jury according to the principles of law and evidence which have application, and the practices and standards appropriate of criminal trials. I think this has been done.

■ Laying aside all testimony which has been presented relative to Count I, the government has established the guilt of the defendant as to the offenses laid in Counts II, III and V.

For reasons heretofore given, the jury had sufficient basis to find the defendant

transported said securities from New York to Pennsylvania. Through his own activities he caused the securities to constitute interstate commerce. Therefore, since he gained possession before he came to Pennsylvania, that possession continued against all the world regardless of where he would go or what he would do.

On the basis of the reasons given in support of Count I, I reach the conclusion that the jury was justified in finding the defendant's guilt as to Counts II, III and V.

Regardless of the sufficiency of the proof to support Counts II, III and V, it is necessary to consider Counts IV and VI.

▉▉▉ Where an indictment charges several offenses or the commission of one offense in several ways, the withdrawal from jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of indictment. United States v. Krepper, 3 Cir., 159 F.2d 958.

▉▉▉ Withdrawal by the Court from the jury of parts of an indictment unsupported by evidence or the finding of the court in a motion for arrest of judgment that the evidence does not support part of the indictment, is not an amendment of the indictment, and is not even remotely an infraction of the constitutional provision that "no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." Salinger v. United States, 272 U.S. 542, 47 S.Ct. 173, 175, 71 L.Ed. 398.

### Count IV

The fourth count of the indictment charges that on and about the 8th day of August, A. D. 1946, at McKeesport, in the County of Allegheny, in the Western District of Pennsylvania, the defendant, Irving Segelman, did unlawfully and knowingly sell to one Max H. Feldman, McKeesport, Pennsylvania, a certain stolen security, to wit, a $1,000.00 United States Treasury Bond, Serial No. 116213-C, the property of one Pincus Rothstein, Lawrence, Long Island, New York, which said security had there-tofore been stolen, and which was moving as, and was a part of, and constituted interstate commerce from New York City, New York, to McKeesport, Pennsylvania; he, the said defendant, well knowing said security to have been stolen.

### Count VI

The sixth count of the indictment charges that on and about the 8th day of August, A. D. 1946, at McKeesport, Pennslyvania, the defendant, Irving Segelman, did unlawfully and knowingly sell to one Max H. Feldman, McKeesport, Pennsylvania, a certain stolen security, to wit, a $1,000.00 United States Treasury Bond, Serial No. 484667-H, the property of one Pincus Rothstein, Lawrence, Long Island, New York, which said security had theretofore been stolen, and which was moving as, and was a part of, and constituted interstate commerce from New York City, New York, to McKeesport, Pennsylvania; he, the said defendant well knowing said security to have been stolen.

As to Counts IV and VI there is no question that the defendant sold the bonds to Feldman on August 8, 1946, at McKeesport, Pennsylvania. Furthermore, an inference can be drawn from recent possession of stolen securities that the possessor knew them to have been stolen, and sufficient proof exists to establish the defendant sold the bonds knowing them to have been stolen.

The major problem relates to the determination whether at the time of sale they were moving as, were a part of, or which constituted interstate commerce.

▉▉▉ In view of what has been heretofore stated, the proof does not meet the burden required as to the securities moving in, or being a part of interstate commerce, at the time of sale.

An inference can not only be drawn that the possessor of recently stolen property is the thief, but a further inference that the possessor transported the property, knowing it to be stolen, in interstate commerce to another state where it was found in his possession. Morandy v. United States, supra.

126

Therefore, sufficient evidence exists in the record to establish that the defendant sold said securities, knowing them to have been stolen, since through his own act of transportation he caused them to constitute interstate commerce.

Since the problems in the instant case do not appear to have been considered by an appellate tribunal, it may be that subsequent determination of the questions will result in the discharge of the defendant.

It is, therefore, in the interest of the fair and just administration of justice that I make the following comment. The defendant should not be permitted to return to society without punishment for the offenses which he committed, for technical reasons.

There is no question in my mind that under the proof offered, the defendant would also be guilty of transporting or causing to be transported said securities in interstate commerce. My problem is to construe the indictment with the proof. I cannot rewrite or modify the phraseology used in the indictment.

The statute of limitations for said offenses is three years. 18 U.S.C.A. § 582 [now § 3282].

Sufficient time remains to indict the defendant as to Counts I and II for transporting or causing to be transported said securities in interstate commerce. 18 U.S.C.A. § 415 [now § 2314].

 If authority existed, I would so direct, but the United States Attorney is vested with a large discretion as to matters being submitted to grand juries, and such discretion is not subject to the control of the District Court. United States v. One 1940 Oldsmobile Sedan, 7 cir., 167 F.2d 404; United States v. Thompson, 251 U.S. 407, 40 S.Ct. 289, 64 L.Ed. 333.

It would be a travesty on justice if the defendant were exonerated from the penalties of the federal law for technical reasons. In order to make positive that no such situation will arise, and for due precaution, I would suggest that the United States Attorney present an indictment to the September grand jury at the next term of court at Erie, Pennsylvania, which commences September 29, 1949. That said indictment should comprise two counts and charge the defendant with transporting or causing to transport said securities in interstate commerce, knowing them to have been stolen. 18 U.S.C.A. § 415 [now § 2314].

The motion of the defendant to set aside the verdict or for the arrest of judgment as to each of the six counts of the indictment is refused.

An appropriate Order will be filed.