Samuel J. DE FREESE, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 17457.

United States Court of Appeals
Fifth Circuit.

Sept. 30, 1959.

Rehearing Denied Nov. 4, 1959.

Arthur D. Herrick, New York City, for appellant.

Frank O. Evans, U. S. Atty., Floyd M. Buford, Asst. U. S. Atty., Macon, Ga., for appellee. Alvin L. Gottlieb, William J. Risteau, Attys., Dept. of Health, Education, and Welfare, Washington, D. C., J. Robert Sparks, Asst. U. S. Atty., James W. Dorsey, U. S. Atty., Atlanta, Ga., of counsel.

Before JONES, BROWN, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The appellant, Samuel J. DeFreese, a physician, was indicted for violation of the Federal Food, Drug, and Cosmetic Act. 21 U.S.C.A. § 301 et seq. He was tried before a jury and found guilty on each of three counts. We affirm the conviction.

Counts one and two of the information charged Dr. DeFreese with dispensing, without a prescription, dl-amphetamine [1] sulphate tablets in a bulk container. The third count charged Dr. DeFreese with a sale of phenobarbital tablets [2] without a prescription. The information alleged that these drugs had been shipped in interstate commerce; that the sales were in violation of 21 U.S.C.A. §§ 353(b) (1) and 331(k).

The appellant practices in Monroe, Georgia. Wilbur R. Sumrall, Jr., an inspector for the Food and Drug Administration, approached Dr. DeFreese on August 7, 1957 and inquired about purchasing 20,000 "bennies" (benzedrine tablets). Sumrall posed as a truck driver and a "pusher" or salesman of dl-amphetamine sulphate tablets. They drove to appellant's office in Monroe, Georgia. Appellant weighed out approximately 20,000 tablets on a scale and gave them to Sumrall. Sumrall paid him $200 for the tablets.

Dr. DeFreese did not give Sumrall a physical examination nor did he consider Sumrall as a patient. He told Sumrall, in case he should be caught, to say that the tablets were "just aspirin tablets". Sumrall had a concealed portable wire recorder that recorded his conversation with DeFreese.

On August 22, 1957, Sumrall, accompanied by another inspector for the Food and Drug Administration, made a second purchase of 20,000 dl-amphetamine sulphate tablets (Count two). He purchased also 1,000 phenobarbital tablets (Count three). In each case the amphetamine tablets were packed in a bulk container and bore labeling setting forth all the statutory information required by the Federal Food, Drug, and Cosmetic Act, including the name of the manufacturer, the name of the drug, the quantity of tablets, the strength of each tablet, dosage, the generally accepted warnings against misuse, and the pre-scription legend to the effect that federal law prohibited its dispensing without prescription. The phenobarbital was repackaged and did not bear a label when sold.

## I.

The appellant contends, first, that the government failed to prove that the phenobarbital had been shipped in interstate commerce. 21 U.S.C.A. § 331 (k).

The government's proof of interstate shipment consisted of showing that the tablets were manufactured in a state other than Georgia, where they were sold. Dr. Albert H. Tillson, a microanalyst employed by the Food and Drug Administration, testified that on the basis of scientific examination, microscopic markings, comparison with samples, and by other means, he determined that the tablets were manufactured by Excel Pharmacal Company of New York. This company has only one laboratory and it is located in New York City. The manager of Excel Company denied any sale to DeFreese.

After an interstate shipment, it is immaterial when or how Dr. DeFreese obtained the drugs. United States v. Sullivan, 1948, 332 U.S. 689, 68 S.Ct. 331, 92 L.Ed. 297; Archambault v. United States, 10 Cir., 1955, 224 F.2d 925. Since the tablets were manufactured outside the state of Georgia and sold by Dr. DeFreese in Georgia, the inference is inescapable that there was an interstate shipment.

On appeal, but not during the trial, appellant makes the objection that it is impossible to tell whether Dr. Tillson testified as an expert or as one familiar with the facts; that his testimony was unscientific and entitled to no weight. The record discloses that Dr. Tillson has obtained three degrees in chemistry, belongs to an honorary scientific fraternity, and has had several ar-

---

1. Dl-amphetamine is a "dangerous drug" within the meaning of Section 353(b) (1) (B).

2. Phenobarbital is a "habit-forming drug" within the meaning of Section 353(b) (1) (A), as defined by Section 352(d) and 21 C.F.R. 165.1.

ticles published on microanalysis. His duties involve microscopic examination of foods and drugs in order to identify the ingredients and the manufacturing source of drug tablets. Whether a witness qualifies as an expert rests within the discretion of the trial court. Wharton, Criminal Evidence § 968 (11th ed. 1935). Here, there is no doubt that Dr. Tillson testified as an expert and that his testimony was admissible to show that the tablets were manufactured outside of Georgia. Aeby v. United States, 5 Cir., 1953, 206 F.2d 296, certiorari denied 346 U.S. 885, 74 S.Ct. 136, 98 L.Ed. 390, rehearing denied 346 U.S. 917, 74 S.Ct. 273, 98 L.Ed. 413. No evidence was offered to contradict Tillson's method of identification. The jury deemed it sufficient to establish interstate shipment. There is substantial evidence to sustain the jury's verdict.

## II.

■ The appellant attempts to drag in the Jencks case, infra, contending that the government should have furnished a machine for him to play back the wire recorder.

Sumrall testified that he had concealed on his person a Minifone electronic wire recorder on which was recorded his conversation with DeFreese. Appellant's counsel moved for the agent's "entire file and findings about Dr. DeFreese" for the purpose of impeachment and questioning, including the wire recording. Over objection of government counsel, relying on 18 U.S.C.A. § 3500,[3] the district court ruled that appellant's counsel was entitled to hear the recording. The recording was not played before the jury; it was played in chambers.

Later, it was brought out on cross-examination that the original wire recording had not been delivered. Instead, a tape recording made from the original had been delivered to the appellant and

played. Appellant's counsel then moved for inspection of the original. The government agreed and delivered the original wire recording, but did not furnish the machine necessary to play back the original. The government then placed two inspectors on the stand to testify that the Minifone wire recorder used by Sumrall was not the property of the United States, but had been rented by Sumrall and returned to the firm supplying it. Neither the government nor appellant's attorney could find a machine upon which the original wire could be played back. However, the record is clear that whatever was on the wire was transferred to the tape that was played back on the tape recorder. Further, the appellant was permitted to examine reports made by Sumrall, including a typewritten transcript of the recording. The Court afforded appellant ample time to listen to this tape, and also an opportunity to obtain a play-back machine, if one could be found.

Appellant moved to suppress the evidence and for a judgment of acquittal, contending that denial of these motions constituted error and grounds for reversal under Jencks v. United States, 1956, 353 U.S. 657, 77 S.Ct. 1007, 1 L. Ed.2d 1103. The Jencks case did not concern statements made by the defendant. It involved statements made by two undercover informants of the Federal Bureau of Investigation. These statements, or reports based on them, were in the possession of the government. In the instant case the government did not have in its possession a machine which could play the original wire recording.

The Jencks rule does not require the government to furnish something it does not have and cannot obtain. Here, everything the government did have in its possession was turned over to the appellant, including a tape recording and

---

3. In any criminal prosecution brought by the United States, Section 3500 requires the government to produce, for the defendant's inspection, any statement *in the possession of the United States* which was made by a government witness or prospective government witness. This statement can be demanded only after the witness has testified on direct examination, and it is limited to the subject matter as to which the witness testified.

transcript of the full original wire recording. This is all that justice and fairness require.

### III.

Appellant's third specification of error is that he was not allowed to introduce evidence showing the relative toxicity of amphetamine as compared with drugs that are legally sold without a prescription. Full proof of his contention would not excuse the sales by him of a drug that falls within the application of 21 U.S.C.A. § 353(b) (1) (B).

### IV.

The appellant's final contention is that 21 U.S.C.A. § 353(b) (1) does not apply to wholesale transactions but only to sales to individual consumers. The same contention was answered by this Court in DeFreese v. United States, 5 Cir., 270 F.2d 730.

Judgment is
Affirmed.