Edward BROWDER, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 18362.

United States Court of Appeals Fifth Circuit.

June 21, 1961.

Rehearing Denied Aug. 1, 1961.

Richard R. Booth, Miami, Fla., for appellant.

John L. Briggs, Asst. U. S. Atty., Jacksonville, Fla., Edward F. Boardman, U. S. Atty., Southern Dist. of Florida, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and CAMERON and JONES, Circuit Judges.

TUTTLE, Chief Judge.

This appeal attacks the conviction of appellant on two counts of a six-count indictment for having in interstate commerce knowingly and willfully received and concealed stolen securities knowing them to have been stolen and which were actually stolen from two banks in Ontario and Quebec Provinces in Canada. These acts were charged to be in violation of the provisions of Title 18, United States Code, Section 2315.[1]

1. This section is as follows:

"§ 2315.  Sale or Receipt of Stolen goods, Securities, or monies.

"Whoever receives, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, moving as, or which are a part of, or which constitute interstate or foreign commerce, knowing the same to have been stolen, unlawfully converted, or taken; or

"Whoever receives, conceals, stores, barters, sells, or disposes of any falsely made, forged, altered, or counterfeited securities, or pledges or accepts as security for a loan any falsely made, forged, altered, or counterfeited securities, moving as, or which are a part of,

The attacks of the appellant are of three kinds: (1) on the indictments; (2) on the sufficiency of the evidence; and (3) on the conduct of the trial.

The contentions as to the indictments are to the effect that they were not specific enough to put appellant on notice as to which securities he was being prosecuted on and that they were not specific enough to protect him against the danger of subsequent prosecution as to the same offenses.

The indictment originally charged six offenses; counts one and three charged Browder with transporting stolen securities in interstate commerce, count one describing certain securities as "securi- ties stolen at the Brockville Savings and Trust Company, etc." and count three describing certain securities as "securities stolen at the Caisse National D'Econ- omie Insurance Company, etc."; counts two and four charged Browder with knowingly and willfully receiving and concealing the same stolen securities; [2] counts five and six charged Browder with "disposing" of the two groups of stolen bonds, knowing them to have been stolen.

There was an additional indictment charging appellant together with Fran- cisco Ferrara, with having conspired to do the acts charged against them in the six counts above outlined. The two in- dictments were consolidated for trial.

or which constitute interstate or foreign commerce, knowing the same to have been so falsely made, forged, altered, or counterfeited; or

"Whoever receives in interstate or for- eign commerce, or conceals, stores, barters, sells, or disposes of, any tool, im- plement, or thing used or intended to be used in falsely making, forging, altering, or counterfeiting any security, or any part thereof, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing that the same is fitted to be used, or has been used, in falsely making, forging, altering, or counterfeiting any security, or any part thereof—

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

"This section shall not apply to any falsely made, forged, altered, counter- feited, or spurious representation of an obligation or other security of the United States or of an obligation, bond, certifi- cate, security, treasury note, bill, promise to pay, or bank note, issued by any for- eign government or by a bank or cor- poration of any foreign country." 18 U.S.C., § 2315.

2. Since these are the two counts on which appellant was convicted the language of counts two and four are here repro- duced in full:

"Count Two

The Grand Jury further charges:

That on or about March 2, 1959, at Miami, in the Southern District of Flori- da,

Edward J. Browder, Jr., alias John Smyth,

did knowingly and wilfully receive and conceal stolen securities of a value in ex- cess of $5000.00, to-wit: Securities stolen at the Brockville Savings and Trust Company, Brockville, Ontario Province, Canada, on May 3rd or May 4, 1958, Dominion of Canada bonds bearing 3% interest; City of Windsor general debenture bonds bearing 3½ percent in- terest; bonds of the Dominion of Canada, Province of Manitoba, bearing 5½% in- terest; and other Canadian bonds, which constitute interstate commerce, knowing the same to have been stolen; in viola- tion of Title 18, United States Code, Sec- tion 2315.

\*     \*     \*     \*     \*

Count Four

The Grand Jury further charges:

That on or about March 2, 1959, at Miami, in the Southern District of Flori- da,

Edward J. Browder, Jr., alias John Smyth,

did knowingly and wilfully receive and conceal stolen securities of a value in ex- cess of $5000.00, to-wit: securities stolen at the Caisse National D'Economie Insurance Company, Montreal, Quebec Province, Canada, being bonds of the City of Longueuil, Province of Quebec, Canada, bearing 5½% interest; bonds of LaVille de Pont-Visu, Province of Quebec, Canada, bearing 4½% interest; bonds of LaVille de Ste-Therese, Prov- ince of Quebec, Canada, bearing 4% in- terest; bonds of LaVille de Ste-Rose, Province of Quebec, Canada, bearing 4½% interest, and other Canadian se- curities, which constitute interstate com- merce, knowing the same to have been stolen; in violation of Title 18, United States Code, Section 2315."

The trial court, at the conclusion of the government's case, granted a motion for judgment of acquittal in the conspiracy case, and, at the close of the trial, entered a judgment of acquittal as to counts five and six. The jury found the appellant guilty of the two receiving and concealing counts and found him not guilty of the two transportation counts.

■ The requirements of an indictment to withstand a motion to dismiss are well established. As set out in the Federal Rules of Criminal Procedure: "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." F.R.Cr.P. § 7(c), 18 U.S.C.A. Except as to the element of interstate commerce, discussed below, we have no doubt that this indictment was sufficient in the circumstances of this case to inform the appellant of the fact that he was being charged with receiving and concealing stolen securities knowing them to be stolen and of a value in excess of $5,000, and that they were securities stolen from a certain named bank. We think that the indictment standing alone charged receiving or concealing all of the bonds stolen on the days mentioned from the designated financial institutions. This was subsequently limited by a bill of particulars naming a lesser number of bonds. When, in response to the motion for a bill of particulars, the United States furnished a list of the specific numbered bonds which it said were "the securities referred to in Count * * * 2 * * * 4 of the indictment," any contention that there was insufficient information to prevent the danger of double jeopardy was removed from the case. See Bartell v. United States, 227 U.S. 427, 33 S.Ct. 383, 57 L.Ed. 583, and Dunbar v. United States, 156 U.S. 185, 191, 15 S.Ct. 325, 39 L.Ed. 290.

■ Appellant's criticism of the manner and time of furnishing the bill of particulars is not available to him here. In view of the fact that all of the bonds involved had been taken from appellant upon his arrest, the only conceivable need for the better description was to protect him against a subsequent prosecution on the same securities as to which he was here proceeded against. Since he was furnished the list, squarely pinpointing the securities made the basis of this prosecution, we think it immaterial that this list was not furnished earlier in the course of the proceedings.

■ The further attack on the indictment touches on the expression, "which constitute interstate commerce." Appellant comments only that, "The indictment by the use of the present tense renders the charge meaningless; it is only proper to charge that the bonds *constituted* interstate commerce at the time they were allegedly received. It is not so charged; the indictment in this respect is defective." It will be noted that the appellant does not attack the indictment on the ground that the alleged act of the accused in receiving or concealing the bonds under the circumstances did not, or could not, "constitute" interstate commerce, a point which the government says is answered by the three cases of United States v. Segelman, D.C.W.D.Pa., 86 F. Supp. 114, United States v. Rocco, D.C. W.D.Pa., 99 F.Supp. 746, and DeFreese v. United States, 5 Cir., 270 F.2d 737. It is only argued that the indictment did not adequately state that the acts did in fact constitute interstate commerce. We think this is clearly without merit.

The next attack by appellant is on the sufficiency of the evidence. We conclude this is equally without substance. It was testified that the bonds had been stolen from the financial institutions in Canada; that some of them had been offered to a potential purchaser by Ferrara in Boston; that Browder met Ferrara in Miami and he later made a trip to Europe and tried unsuccessfully to sell the bonds in Switzerland; that he returned to Miami and tried to sell the bonds to two individuals, whom he met rather casually, at a discount of as much as 21 percent at a time when the bonds (bearer bonds) were selling at 97½; that he told different stories as to the source of the bonds, but declined to let it be known that he was the owner; that he finally submitted a

sample bond to a potential purchaser or go-between for a presumed purchaser and this was turned over to the FBI, who kept the appointment for closing the sale of $138,000 face value of the bonds; that after the arrest and after being warned that he need say nothing, the FBI agent testified that Browder made a suggestion to the agent that if they would return these bonds, drop the arrest and avoid any publicity, he had a good chance of "recovering $1,750,000 more worth of these bonds"; [3] finally, that one of the persons Browder approached for the purpose of acting as a go-between testified that Browder had told him the bonds were stolen, but that he had nothing to do with the theft.

To counter this evidence Browder testified that he had been given the bonds by a group of Cubans in return for the shipment of certain arms from Italy, and he attempted to explain his willingness to sacrifice them at 79 cents on the dollar because of some deal with Cuban pesos. He was unable to explain, however, why he could not simply sell the bearer bonds at 97½ and then invest the much larger proceeds in Cuban pesos. At any event the jury seems not to have believed his story. Perhaps some of this disbelief stemmed from the fact that it was fairly convincingly proved that one of the men he testified as having made the negotiations with him on December 23, 1958, had been killed in an aircraft accident in Cuba on November 5, 1958.

■ The only substantial question presented by appellant here is whether there was sufficient evidence from which the jury could believe that either the receipt or concealment of the bonds was in interstate commerce. We think the evidence fully warrants a finding by the jury that the bonds were received by Browder from Ferrara for the purpose of selling them; that Browder had them with him in Europe in an effort to sell them; that he subsequently brought them back or sent them back to Miami for the purpose of selling them there.[4] Browder's possession of the bonds under the circumstances is admitted in appellant's brief to warrant the inference that he concealed them. "[I]t is apparent from his mere possession of the bonds that Browder received them and that in the course of his possession he concealed them * * *" Thus it could be found that he concealed them at the very time that he was attempting to dispose of them as a part of interstate or foreign commerce.

■■ We then come to the contentions about the conduct of the trial. We

3. As testified to by Agent Lenihan, this was the suggestion:
   "A. Well, on the way up to our F.B.I. office at 39th Street and Biscayne Boulevard, Mr. Browder and I were sitting in the back seat of one of the Government cars, and Mr. Browder told me that he was afraid that he was going to get a lot of publicity in connection with this arrest and wanted to know if it would be possible for him to work out some sort of arrangement with us; and in return for not being arrested and not getting any publicity, he would agree to cooperate with the Government.
   He said that he could have an 80 to 85 per cent chance of recovering $1,750,-000 more worth of these bonds. He said that in order to do that, he would have to be given this group of bonds back, not be arrested and not have any publicity regarding the matter.

And, if he couldn't get the bonds back, he would have to have either the pesos or the dollar value for the bonds, and he would negotiate with his forces, and he would be able to get us about $700,000 or $800,000 worth of these same Canadian bonds, the same type Canadian bonds, within 24 or 48 hours. And then, within a week, he said, he would be able to produce about a million dollars more worth of these bonds."

4. There was evidence that he wrote from Europe to one Lemberg in Miami and later telephoned him from New York about "something which should be very interesting for your Cuban banker friend and will look forward to discussing it on my arrival there," and that on arrival in Miami he told Lemberg that he wanted to put up some collateral for a loan; thereafter Lemberg introduced him to Bekowitz and Browder tried to sell the bonds to the latter.

conclude there was no error in the refusal of the trial court to sever the two cases for trial or in the refusal to grant a continuance. Nor is there any merit in appellant's contention that the court should have required the government to elect between counts 1 and 3 on the one hand, and 2 and 4 on the other.

Following the trial appellant submitted, purportedly pursuant to Rule 75(n) Federal Rules of Civil Procedure [28 U.S.C.], as made applicable by Rule 39(b) (1) of the Federal Rules of Criminal Procedure, a statement by counsel for appellant touching on an occurrence "during the course of this action and not stenographically reported." This statement reported an alleged conversation between a government witness and a juror.[5] The government moved to strike the proposed statement, disagreeing with the statement "materially." Since it appears that the motion for supplementing the record was never called up and the statement of counsel was not "settled and approved," as required by the Rule, there is nothing here for our consideration. The stenographic record can be amended in a manner specifically set out in the rules. This includes a statement by the moving party and a settlement by the court of any dispute touching on the matter. The burden is on the party seeking to enlarge the transcript, and a failure to comply with the rule leaves the matter outside the record.

The judgment is affirmed.

---

5. The statement made by counsel follows:

"Mr. Booth (Defense counsel Richard R. Booth, addressing U. S. District Judge Emett C. Choate): Your Honor, my client, his wife and I have just overheard a portion of a converation which I believe should be brought to the attention of the Court. As the three of us were approaching this courtroom we observed several persons conversing amiably in the east hall on this floor near the Clerk's Office. Those participating in this conversation were Government witness Cox, juror Vincent W. Africano, Jack Ancher and John Ashe, both of whom were peremptorily excused from service on the jury in this case by myself. We overheard the Government witness, Mr. Cox, say to Mr. Africano, the juror: 'Oh, is he on the jury? Well, I'll have to talk to him. He sold me a car not so long ago.' I call to the Court's attention that William M. Sands, a member of the jury, is with a Miami automobile dealer, Luby Chevrolet, which leads me to conclude that the Government witness was talking about Mr. Sands. Since all the members of the jury said under oath that they did not know any of the Government witnesses when a list was read to them and since any contact between members of the jury and persons other than counsel is highly irregular and has been forbidden by this Court, the non-disclosure and the conversation in the hall may have well been prejudicial to my client, and I think an inquiry should be made to determine whether that is the case, because if Mr. Sands sold Mr. Cox a car, or if the conversation was prejudicial I will want to ask for a mistrial.

"Mr. Briggs (Assistant U. S. Attorney John L. Briggs prosecuting the case): I think the procedure to be used in situations like this is to proceed with the trial and then have an inquiry after the verdict has been returned.

"Judge Choate (Presiding Judge Emett C. Choate): Yes, that is true; so let us proceed with the trial. If after the verdict is returned you feel that an inquiry should be made, recall the incident to the Court and we shall look into the matter."